**Brenda WOOTEN, Plaintiff–Appellant,**

v.

**Leonard E. LOSHBOUGH, Jr., et al., Defendants–Appellees.**

**No. 90–3003.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 24, 1991.

Decided Dec. 26, 1991.

William E. Winingham (argued), Wilson & Kehoe, Indianapolis, Ind., John C. Firth, Sopko & Associates, South Bend, Ind., for plaintiff-appellant.

James H. Pankow (argued), Jones, Obenchain, Ford, Pankow & Lewis, Robert J. Palmer, May, Oberfell & Lorber, South Bend, Ind., Michael J. Howlett, Jr., Joseph A. Strubbe, Pope & John, Chicago, Ill., for defendants-appellees.

Before POSNER and KANNE, Circuit Judges, and ENGEL, Senior Circuit Judge.[*]

POSNER, Circuit Judge.

The district judge dismissed this suit—which had been brought under RICO (the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.*)—on the pleadings because he thought the plaintiff did not have standing. 738 F.Supp. 314 (N.D.Ind.1990). The complaint alleges the following facts, which we must take as true for purposes of the appeal. Federal Press Company, a manufacturer of printing presses, was controlled by four members of the Loshbough family, who are named as defendants along with the company's accounting firm and an accountant formerly employed by that firm who had gone to work for Federal Press. Beginning in 1973, the defendants (with the accounting firm in an aider and abettor role) used funds belonging to Federal Press to pay their personal expenses, to pay themselves inflated rents for property that they owned and leased to the company, and in other ways "to divert corporate funds for personal purposes, with the foreseeable result of the discharge of all corporate debts through bankruptcy proceedings, thereby allowing the defendants to keep and maintain their personal gain." "As a direct and proximate result" of the defendants' fraudulent activities, "there were insufficient corporate funds available to purchase product liability insurance, establish a reserve fund, employ competent engineers or other technical assistance, or satisfy debts owed to corporate creditors, such as plaintiff, Brenda Wooten, who were injured by products manufactured by Federal Press Company." Wooten had lost several fingers while operating at her place of work a press manufactured by Federal Press.

All that was in 1983. In 1985 Wooten obtained a products liability judgment of $850,000 against Federal Press. Its assets depleted by the defendants' misappropriation of corporate funds, Federal Press could not pay the judgment and, shortly after it was rendered, was forced into bankruptcy. Wooten has filed a claim in the bankruptcy proceeding as a judgment creditor. She argues that her judgment against Federal Press was a property worth $850,000 that the defendants destroyed through their fraudulent activities, which we may assume constitute a pattern of racketeering activity within the meaning of RICO, and she points out that "any person injured in his business or property by reason of a violation" of RICO is entitled to recover threefold the damages sustained. 18 U.S.C. § 1964(c).

We may assume that the defendants' activities made it less likely that Wooten would collect her judgment; and probabilistic injury is enough to establish standing in the Article III sense. *North Shore Gas Co. v. EPA*, 930 F.2d 1239, 1242 (7th Cir.1991), and cases cited there. But the concept of standing has a broader significance. It is a gatekeeper regulating the flow of litigation arising out of an injurious act or a series of such acts, here the fraud of the Loshboughs and their accomplices. An injury to one person or entity will often have a ripple effect on others, perhaps many others. If a cartel charges a monopoly price to the dealers to whom it sells, they may pass on a part of the higher price to their customers, who are therefore

* Hon. Albert J. Engel, of the Sixth Circuit, sitting by designation.

hurt by the monopoly price along with the dealers. To the extent that the customers pay the higher price rather than substitute other products, they have less money to pay for those other products, whose sellers therefore suffer. Or, if a seller fails to make prompt delivery of some good, the buyer's creditors may incur a monetary loss that may in turn hurt their creditors. Coming closer to this case, if a corporation is the victim of a tort that drives it into bankruptcy, its shareholders, creditors, suppliers, employees, and the taxpayer may all suffer.

One solution is to let everybody who is hurt sue, and to use the class action and sophisticated methodologies of incidence and apportionment to estimate the harm to each member of the class. (Without apportionment, there would be multiple recovery for the same harm, resulting in overcompensation and overdeterrence.) Judges, finding that solution too burdensome, have instead cut off liability at the first level, leaving to contracts and contract law the apportionment of the harm between that and subsequent levels. *Southern Pacific Co. v. Darnell–Taenzer Co.*, 245 U.S. 531, 533, 38 S.Ct. 186, 186, 62 L.Ed. 451 (1918) (Holmes, J.); *In re Industrial Gas Litigation*, 681 F.2d 514 (7th Cir.1982); *Carter v. Berger*, 777 F.2d 1173, 1175 (7th Cir.1985); *Mid–State Fertilizer Co. v. Exchange National Bank*, 877 F.2d 1333, 1335 (7th Cir. 1989), and cases cited there. In antitrust, for example, only the first tier of purchasers from a cartel can sue the cartel's members for damages. *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977); *Kansas v. Utilicorp United, Inc.*, —— U.S. ——, 110 S.Ct. 2807, 111 L.Ed.2d 169 (1990). Whether subsequent purchasers to whom the first tier of purchasers may have passed on much of the overcharge can obtain any part of the damages is therefore left to the explicit or implicit contractual arrangements between the tiers, which may include a price break to the subsequent tiers if the first tier has the prospect of recovering damages that it need not share with them. This solution (that is, confining the right to sue to the first tier) minimizes the burden on the courts and maximizes the role of private ordering in the sorting out of the consequences of misconduct. *Mid–State Fertilizer Co. v. Exchange National Bank, supra*, 877 F.2d at 1335–36.

■ There are exceptions, as where the widow of an accident victim is entitled to sue for loss of consortium, rather than the entire damages being channeled into the victim's own estate. But they are rare, and in RICO as in antitrust and in tort and contract law generally, liability stops at the first victim. *Id.* at 1335, and cases cited there. That victim was Federal Press Company, which the defendants are accused of having plundered. The company's claim against the defendants for what they did to it is a corporate asset now vested in the trustee so that he can liquidate it for the benefit of the company's creditors—including Wooten—in accordance with their legal entitlements in bankruptcy. Wooten is seeking to jump the queue—to bypass bankruptcy—to wrest this valuable corporate asset from the trustee by suing the defendants directly. To allow her to do this would upset the priorities established by the bankruptcy law—which gives a low priority to a judgment creditor, who despite the apparent connotation of the term is just another unsecured creditor until by executing the judgment he obtains a judicial lien. *In re Lindsey*, 823 F.2d 189, 191 (7th Cir. 1987); *Barnett v. Stern*, 93 B.R. 962, 975–77 (N.D.Ill.1988).

Wooten's counsel admits the general force of the principle that a bankrupt's creditor cannot bypass the bankruptcy proceeding by suing the person or other entity whose tort or statutory violation or breach of contract caused the bankruptcy, but he tries to deflect it by arguing that the defendants' misconduct was aimed at her. That was indeed the case in *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096 (2d Cir.1988), which upheld the standing of the creditor of a bankrupt corporation to bring a RICO suit, and on which Wooten relies heavily. It is not the case here. The fraud is alleged to begin in 1973 and Wooten does not appear on the scene until a decade later, when she is injured, and by the time she

obtains a judgment in 1985 the fraud is only a few months away from being terminated by bankruptcy. She was a target of the fraud only in the sense that any corporate creditor is likely to be hurt if the people controlling the corporation so deplete it of assets that it cannot pay a large debt.

■ Bankers Trust does not hold that if RICO defendants plunder a corporation that they control, driving it into bankruptcy, in order to elude a specific, pesky creditor, the creditor has standing to maintain a suit under RICO. The first level of injury is to the corporation, and the creditor suffers only because he has a claim against it. The point of Bankers Trust is that the plundering of the bankrupt corporation was only one means by which the defendants tried to thwart the creditor-plaintiff. See id. at 1099, 1101. Another was bribing a judge in a suit brought by the corporation against the creditor, as a result of which the creditor was forced to spend more than $100,000 in legal fees. And there were others. These were not injuries to the corporation. It is as if the defendants in our case had bribed the judge in Wooten's products liability suit. But all they are alleged to have done is to take money from the corporation that the corporation owed Wooten (and others), and that harm can be fully rectified by a suit by the corporation, which is to say by its trustee in bankruptcy. To allow Wooten to sue would be to permit a double recovery of damages—and this under a statute that already requires that any damages judgment be trebled. We hold, in agreement with the Fifth Circuit, that corporate creditors, like shareholders, cannot sue under RICO when their only injury comes about through the depletion of corporate assets. *Ocean Energy II, Inc. v. Alexander & Alexander, Inc.*, 868 F.2d 740, 745–46 (5th Cir.1989). There was, to repeat, additional injury in Bankers Trust, as in our own *Ashland Oil Co. v. Arnett*, 875 F.2d 1271, 1280 (7th Cir.1989).

AFFIRMED.