### In re M & L BUSINESS MACHINE CO., INC., Debtor.

AMAZING ENTERPRISES, Bonnie Andrikopoulos, Samuel Avital, John Baker, Gary Bozlinski, Colleen Bozlinski, Barbara Bronk, Martha Carroll, Laverne Charvat, Jeff Cook, Jerry Cooper, Roger Crane, Vernon Crow, William Kilton Crow, Ruth Crow, Christine Davis, Tammy Davis, Robert J. Edwards, Phyllis C. Edwards, Mark Engle, Debbie Engle, Susan Evans, Bernie Gabel, Kenda Gable, James F. Gavegan, Arlene Gavegan, Alan R. Ham, Paul Harris, Janet Eden–Harris, Georg Heine, Jane Holden, W.E. Horner, Margaret Howe, Kristen Hughes, Elizabeth Hummel, Katherine Hunt, Investiture, Jeff Jurich, Richard Kimble, Cassandra Kimble, Jeff Kirsh, Lory Kohn, Eliot Lowey, Kathleen McCray, Mark McCray, Claire A. McElwee, John McFadden, Barry McGriff, Perry McKay, David Meeker, Athanasisos Moulakis, Ron Mullins, Pat Ogden, Chris Oliver, Jeff Oliver, Kenneth L. Oliver, Joanne C. Oliver, Eric Pleace, Priscilla Porter, Charles Portillo, Evelyn Portillo, Zahirudeen Premji, Geoffrey Rubenstein, Tom Shor, Donna Shor, Mark Smith, Christos Stathis, Steven J. Troy, Ed Walker and Steve Winber, Plaintiffs,

v.

Christine J. JOBIN, Trustee, Defendant.

Bankruptcy No. 90–15491 CEM.

Adv. No. 91–1504 PAC.

United States Bankruptcy Court, D. Colorado.

Jan. 28, 1992.

See also 132 B.R. 433.

Andrew C. Littman, Stevens, Littman & Biddson, Boulder, Colo., for plaintiffs.

Christine J. Jobin, Katch, Wasserman & Jobin, Denver, Colo., for defendant.

### ORDER ON MOTIONS FOR SUMMARY JUDGMENT

PATRICIA A. CLARK, Bankruptcy Judge.

This matter is before the Court upon the motion for summary judgment filed by Christine Jobin, Trustee for M & L Business Machine Co., Inc. (Trustee). Plaintiffs filed a response and cross-motion for summary judgment. There were additional and supplemental pleadings filed by the parties as well as several motions to strike.[1]

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (O).

M & L Business Machine Co., Inc. (M & L) sold and serviced office equipment. It

---

1. Rarely does the Court have the displeasure of reviewing such antagonistic pleadings wherein at times counsel on both sides lost sight of the issues.

was originally owned by two shareholders, Messrs. Morgan and Ledvina. Sometime in the early 1980's, Robert C. Joseph acquired approximately 50% of the stock in M & L. By 1986, most of Mr. Joseph's stock and the remaining 50% of stock in M & L had been transferred to David Parrish and Daniel Hatch.

The Plaintiffs and others lent money to M & L purportedly for the purchase of large quantities of computer equipment at significant discounts. The computers were allegedly sold to end users for a significant profit. According to the Trustee, the creditors were told that they would earn interest at 10% per month, or 120% per annum for M & L's use of their money. In exchange for the loan, the creditors received interest bearing promissory notes and/or post-dated checks consisting of one check for return of the principal amount, plus one or more post-dated checks for the interest to be earned.

M & L filed a petition for relief under Chapter 7 of the Bankruptcy Code on October 1, 1990. Shortly thereafter, M & L converted its case to one under Chapter 11. On December 18, 1990, the Trustee was appointed pursuant to 11 U.S.C. § 1107 to operate the business. In mid-March of 1991, the Trustee ceased operations of M & L. The case was converted back to a Chapter 7 proceeding on September 26, 1991.

In the bankruptcy cases, the unsecured claims which relate to the loans from Plaintiffs and others total approximately $21,000,000. There are also relatively insignificant unsecured claims for goods or services. In addition, the Resolution Trust Corporation (RTC) as receiver of Capital Federal Savings and Loan holds approximately $9,000,000 as an unsecured claim. The RTC's claims are related to unpaid loans to M & L and/or its principals.[2]

The parties contend that M & L operated a Ponzi scheme. Both the Trustee and the Plaintiffs maintain that Messrs. Joseph,

Hatch and Parrish were the key players in operating the scheme such that there are grounds to disregard the corporate entity. The parties also assert that others assisted in the scheme by acting as brokers to locate persons to place their money with M & L. Those brokers were paid commissions which the Trustee believes may be subject to recovery under applicable Bankruptcy Code provisions or state law.

The Plaintiffs decided to pursue their specific claims against various named individuals and entities, excluding M & L, allegedly responsible for their investments. The Plaintiffs brought two state court actions which are still pending. The first is Boulder District Court Action 91 CV 520 filed on March 26, 1991. Among the claims asserted by the Plaintiffs in that lawsuit against the named individuals and entities are: negligence, violation of Colorado Securities Act, aiding and abetting Colorado securities violations, violation of federal securities law, fraud, violation of the Colorado civil theft statute, negligent misrepresentation, violation of the Colorado Consumer Protection Act, civil conspiracy, alter ego against Messrs. Joseph, Parrish[3] and Hatch, Colorado Civil RICO, and the sale of unregistered securities.

In addition, on or about July 1, 1991, a separate action was filed by the Plaintiffs against the Bank of Boulder, Boulder District Court Action 91 CV 1148. That Complaint was amended and asserts the following causes of action against the Bank of Boulder: aiding and abetting state securities fraud, liability for being a "control person" under state and federal securities law, aiding and abetting federal securities fraud, joint venture with M & L and its representatives, partnership or agency with M & L and its representatives, misrepresentation, claim by Lory Kohn to enjoin Bank and U.C.C. liability for failure to pay instruments timely and conversion.

---

**2.** The loans were to be secured by M & L's inventory and accounts receivable. However, the Trustee found M & L's inventory to consist of over 700 boxes of dirt and/or bricks and a nominal amount of office equipment. Also, the accounts receivable did not exceed $10,000.

**3.** Mr. Parrish subsequently filed a bankruptcy petition which stays the prosecution of the claims filed against him.

The present dispute is whether the Plaintiffs are or should be precluded from pursuing their own claims against various individuals and entities who allegedly are responsible for their investments in M & L.

The Trustee contends that the claims asserted by the Plaintiffs against the Bank of Boulder and other individuals and entities are assets of the estate as defined by 11 U.S.C. § 541.[4] The Trustee argues that the facts and circumstances surrounding the Plaintiffs' claims are similar to the claims of all M & L creditors who lent money to M & L believing that they were dealing with a legitimate company and would receive substantial interest in return for M & L's use of their money. In addition and alternatively, the Trustee maintains that the RICO and related actions involve injuries derivative of those suffered directly by the corporation and the Plaintiffs do not have standing to assert them. Thus, the Trustee contends that the Plaintiffs' injuries are not peculiar and personal to the Plaintiffs, but rather are general and common to the corporation and other creditors.

The Trustee also argues that the policy behind the Bankruptcy Code weighs in favor of allowing only her to pursue these claims so that all similarly situated creditors will be treated alike. As statutory support for her position, the Trustee asserts that Section 544 allows her to pursue these claims on behalf of all creditors of M & L. According to that theory, this will avoid the problems of multiple liability and one creditor recovering a fund which rightfully belongs to all.

Finally, the Trustee claims she has the exclusive right to pursue any action against the officers, directors and shareholders.

The Plaintiffs request a declaratory judgment that the state court claims against the Bank of Boulder and the other individuals and entities are not assets of the estate.[5] Additionally, they request a determination that the Plaintiffs' claims are not general creditor claims of M & L. Consequently, they request a declaratory judgment and determination that the Trustee, on behalf of the M & L bankruptcy estate, has no standing to sue third parties with regard to the Plaintiffs' claims.

In the Plaintiffs' cross-motion for summary judgment they assert several arguments to deny the Trustee standing to prosecute their claims. First, they contend that the Bankruptcy Code does not generally provide a trustee with the power to enforce claims on behalf of creditors against a third party. Second, they maintain that there are no voidable transfers for the Trustee to recover because the Trustee is not claiming that the property in the hands of the defendants in the state court actions belongs to M & L. Moreover, they argue that because M & L was *in pari delicto* with the state court defendants, it would not have its own claim against them for violations arising from the Ponzi scheme.

Other particular standing arguments raised include that under Colorado law only the person buying the security can bring a claim for securities fraud. Also, the Plaintiffs maintain the Trustee does not have the right to pierce M & L's corporate veil. Further, even assuming that their injury is derivative, the Plaintiffs argue that not every derivative injury creates a right for all creditors to sue, precluding suit by only some. For example, to be successful in their claims for securities violations, each Plaintiff is required to prove their respective reliance and injury. Lastly, the Plain-

---

**4.** The Trustee does not claim that the Third and Seventh Claims for relief in Civil Action No. 91–CV–1148–3 are property of the estate. She also does not assert that the Tenth Claim for Relief stated in the Amended Complaint in Civil Action 91–CV–520–3 is property of the estate. In this opinion, reference to "the claims" or "Plaintiffs' claims" relates only to those state court claims which the Trustee maintains belong to the estate.

**5.** The Plaintiffs' request for a declaratory judgment originally only concerned the action filed against the Bank of Boulder, a copy of that complaint was attached to the complaint herein. The Trustee raised the other lawsuit in her Answer and Counterclaim. The parties have sufficiently addressed the issues relating to both state court complaints, as amended, to allow the Court to make a ruling with respect to both actions.

tiffs assert that the underlying purposes of the Bankruptcy Code would not be furthered by allowing the Trustee to recover funds for the estate to be shared generally by creditors who could not pursue the investor/creditor's individual fraud/misrepresentation claims.

In order to grant summary judgment in favor of either party to this action, there must be no genuine issues as to material fact and the movant must be entitled to a judgment as a matter of law. Fed. R.Bankr.P. 7056, incorporating Fed. R.Civ.P. 56; *Electrical Workers' Local Union No. 969 v. Babcock & Wilcox*, 826 F.2d 962, 964 (10th Cir.1987).

The main issue before the Court is whether the Trustee has standing to assert the Plaintiffs' claims. Resolution of that issue involves a determination of whether the Plaintiffs' claims are property of the bankruptcy estate or if there are other grounds to permit the Trustee exclusively to pursue their claims.

██ Property of a bankruptcy estate is broadly defined by Section 541 of the Bankruptcy Code. It includes all legal and equitable interests the debtor held in property, including causes of action upon the filing of the bankruptcy petition. Section 541(a)(1); H.R.Rep. No. 595, 95th Cong., 1st Sess. 367–68 (1977); S.Rep. No. 989, 95th Cong., 2d Sess., 82–83 (1978), U.S.Code Cong. & Admin.News pp. 5787. A trustee has the right to pursue those claims which are property of the estate.

██ As for whether a trustee has the right to pursue claims to collect money not owed to the estate, there is a split of authority.[6] However, all courts seem to agree a trustee does not have the right to pursue a cause of action on behalf of the estate where "the injury is peculiar and personal to the claimant." *Koch Refining v. Farmers Union Central Exchange, Inc.* 831 F.2d 1339, 1349 (7th Cir.1987). Cases deciding this issue typically discuss the continued validity of a decision under the Bankruptcy Act which held that a trustee could not pursue creditors' claims against third parties.

The determinative ruling under the Bankruptcy Act was in the case of *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972). There the Supreme Court ruled that a trustee could not pursue the debtors' debentureholders' claims against a third party. In *Caplin,* the reorganization trustee, on behalf of the debtor's debenture holders, attempted to assert claims of misconduct against the trustee for debenture holders under an indenture trust agreement. The court denied the trustee standing because the statute did not enable the trustee "to collect money not owed to the estate." *Id.* at 428, 92 S.Ct. at 1685. It also remarked that a grant of such standing was a decision that only Congress could make. *Id.* at 435, 92 S.Ct. at 1688. As further ground for denial, the court noted that the debtor had no claim against the indenture trustee who probably was in *pari delicto* with the debtor. Also, the Court acknowledged the potential problem of inconsistent results from litigation pursued by the trustee and that which the debenture holders might bring themselves. This ruling resolved the issue of a trustee's standing to bring an action on behalf of third parties.

When Congress rewrote the bankruptcy laws in 1978, they considered and rejected a provision which would have overruled the outcome in *Caplin.* See *Williams v. Cali-*

---

**6.** Some of the cases which have found that a trustee does not have standing to pursue third party claims on behalf of the creditors are: *Feltman v. Prudential Bache Secur.*, 122 B.R. 466 (S.D.Fla.1990); *Williams v. California 1st Bank,* 859 F.2d 664, 66 (9th Cir.1988) *In re Ozark Restaurant Equipment Co.,* 816 F.2d 1222, 1227 (8th Cir.1987), cert. denied, 484 U.S. 848, 108 S.Ct. 147, 98 L.Ed.2d 102 (1987); *E.F. Hutton & Co., v. Hadley,* 901 F.2d 979 (11th Cir.1990). Several of the cases which have allowed the trustee to bring actions against third parties on behalf of the creditors are: *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.,* 884 F.2d 688 (2d Cir.1989); In re S.I. Acquisition, Inc., 817 F.2d 1142 (5th Cir.1987); *Koch Refining v. Farmers Union Cent. Exchange, Inc.,* 831 F.2d 1339 (7th Cir.1987), cert. denied, 485 U.S. 906, 108 S.Ct. 1077, 99 L.Ed.2d 237 (1988); *In re Western World Funding, Inc.,* 52 B.R. 743 (Bankr.D.Nev. 1985), aff'd in part and rev'd in part, *Buchanan v. Henderson,* 131 B.R. 859 (D.Nev.1990).

*fornia 1st Bank (In re Chacklan Enterprises, Inc.)*, 859 F.2d 664, 666 (9th Cir. 1988). The provision would have permitted the trustee to "enforce any cause of action that a creditor, a class of creditors, an equity security holder, or a class of equity security holders has against any person ..." H.R. 8200, 95th Cong., 1st Sess. 416–17 (1977); proposed Section 544(c). The proposed legislative history stated that it overruled *Caplin* and a judgment on an action brought by the trustee would "bind [binds] all creditors or equity security holders that could have brought the action, and the court may stay the commencement or continuation of another action on the same cause of action." H.R.Rep. 95–595, 95th Cong., 1st Sess. 370–71 (1977), reprinted in 1978 U.S. Code Cong. & Admin. News, 6326. The rejection of the proposed amendment to Section 544 is proof that Congress did not intend to give a trustee standing to raise most damage claims against third parties.[7] The standing limitation eliminates bankruptcy asset distribution problems which may arise when creditors who were not injured by actions of third parties are able to receive the benefit of the trustee's recovery. Further, the limitation prevents conflicts over the binding effect of judgments and settlements by a trustee on creditors who have a right to sue in their own name.

This Court is persuaded by those cases which adhere to the *Caplin* rationale. The Court disagrees with the Trustee's assertion that all of Plaintiffs' claims are similar to those of other creditors. The Plaintiffs' claims are based upon particular and distinct injuries to each of them which must be proven individually for the collection of damages. Moreover, approximately $9,000,000, or at least one-third of the claims held by unsecured creditors, do not arise from loan transactions similar to those entered into by the Plaintiffs. Thus, the Trustee does not have standing to assert the Plaintiffs' claims on behalf of all of the creditors.

The Court is also not persuaded by the Trustee's argument that the Plaintiffs' claims are hers based upon a derivative liability theory. The derivative liability argument is grounded in the notion that the Plaintiffs' claims are derivative from injuries caused by third parties to M & L. While it is true that the actions of the third parties may have injured M & L, thus derivatively injuring all creditors, the Plaintiffs' claims are based upon those actions which specifically injured the Plaintiffs. See *Feltman*, 122 B.R. at 472. They are not based upon a breach of duties owed to the corporation and the injuries resulting therefrom, but upon breaches of duty and misrepresentations made directly to the Plaintiffs.

Further, with respect to the RICO claims, the Court is not convinced that those actions belong solely to the Trustee. The Trustee alerted the Court about a recent case on this issue, *Wooten v. Loshbough*, 951 F.2d 768 (7th Cir.1991). There the Seventh Circuit determined that corporate creditors could not sue under RICO when their only injury came about through the depletion of corporate assets. The *Wooten* case is not persuasive. That case involved a personal injury judgment creditor whose injury was a target of fraud only in the sense that any corporate creditor is hurt if the parties in control deplete corporate assets. Conversely, in this case the Plaintiffs appear to have been the direct targets of misconduct, fraud and misrepresentations to obtain loans for M & L. Thus, even under the rationale in *Wooten* the creditors here would be allowed to proceed.[8]

---

7. There are circumstances where a corporate estate will have claims which belong to it unless abandoned, such as for breach of fiduciary duty owed to it which belong to the estate under state law. *Mitchell Excavators Inc. v. Mitchell*, 734 F.2d 129, 131 (2d Cir.1984). There also may be claims such as RICO claims against the debtor's officers and directors which the creditors and estate would have concurrent and independent standing to bring. *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096 (2d Cir.1988).

8. *Wooten* relies, in relevant part, upon the case of *Ocean Energy II, Inc. v. Alexander & Alexander, Inc.*, 868 F.2d 740 (5th Cir.1989). That case contains an instructive discussion of how to determine whether RICO claims belong only derivatively to the creditors. There the Fifth Circuit found some of the claims by an insured

■ In addition, the Trustee overstates the powers of a trustee under Section 544 for the recovery of claims such as those based upon alter ego actions. Section 544 does not give a trustee all rights and powers of creditors. It gives only rights and powers to avoid transfers of the debtor's property or obligations incurred by the debtor which could be avoided by a creditor or bona fide purchaser under the applicable subsections of Section 544. Those subsections do not encompass the right to recover on an alter ego action.

■ Further, the Trustee's reliance upon *Delgado Oil Co. v. Torres*, 785 F.2d 857 (10th Cir.1986), to support her right to pursue the alter ego claim is not well founded. The court in *Delgado Oil* recognized that the filing of a bankruptcy petition alters the rights of a corporation and its creditors in certain respects. There the court stated, "[a]s a general rule, and outside the context of a bankruptcy case, the fiduciary obligation of officers, directors and shareholders is enforceable directly by the corporation or through a stockholder's derivative action. However, it is, in the event of bankruptcy of the corporation enforceable by the trustee." *Id.* at 860. Yet, the court did not go so far as to determine that actions not enforceable by the corporation or its shareholders could be brought by a trustee.

The *Delgado Oil* case involved an action alleging preferential transfers by a director of the debtor corporation. The court found that the action could not be maintained outside the bankruptcy court because the trustee has the right "to recover damages for misconduct, mismanagement, or neglect of duty by a corporate officer or director." *Id.* The court rejected the plaintiff's pleading that the action was one at common law. First it stated that "[c]entral to the common law doctrine is the recognition that creditors may pursue this remedy on behalf of the corporation to ensure that all creditors are treated equally." (Emphasis in the original.) In reaching that conclusion, the court relied in part upon the case of *Ficor, Inc. v. McHugh*, 639 P.2d 385 (Colo. 1982), another case which involved suit against directors by creditors based upon divestment of corporate property for the directors' benefit.[9] Then the court continued, "even under common law, plaintiff's cause of action is maintainable only through the debtor corporation; hence, it is property of the estate." *Id.* at 861. It is noteworthy that the court recognized the "[p]laintiff never argued alter ego or piercing the corporate veil." *Id.* at n. 12.

At least one court has opined on how the Tenth Circuit might have approached *Delgado* if the alter ego issue had been raised. According to the Second Circuit, the Tenth Circuit's "analysis seemingly would have hinged on state law, as the court stated that because the property allegedly preferentially transferred was the debtor's (as determined by reference to state law), the cause of action to recover that property was the bankruptcy estate's." *St. Paul Fire and Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d at 698 (2d Cir.1989). Based upon that analysis, the Second Circuit determined that if an alter ego action belonged

with the bankrupt insurance company were derivative and others were direct. The claims which were found to be derivative and incidental to the fraud were those against the defendant insurance agents for insurance sales in violation of the state rate structure which actually directly damaged the debtor by selling its policies below rate leading to the debtor's demise and leaving the insured with a worthless policy. The other RICO claims were based upon the use of illegal inducements and unfair competitive practices by defendants to convince them to be insured by the debtor. The court determined that the insured clearly was the victim of the scheme to induce it to buy insurance from the debtor. Hence, the court found that only the insured had standing to sue for those damages.

The court then went on to resolve specific standing requirements under RICO of whether the predicate acts constitute factual causation for the alleged damages, that issue is not before this Court.

**9.** Ficor involved the determination of a creditor group's standing to bring a claim for personal liability against directors based upon an improper distribution to shareholders. The court determined that the statute specified the directors' liability was to the corporation. Since the group was the only unpaid creditor of the corporation, the court allowed the group to recover a judgment because it was not inconsistent with the equitable distribution principle.

**278**

to the corporation, it would be determined that the trustee would be the proper party to assert it. *Id.*

■ Thus, the question of ownership of the alter ego action turns upon who owns the action under state law. In Colorado, an alter ego action to pierce the corporate veil belongs to the creditors of the corporation, not to the corporation itself. See *Colorado Finance Co. v. B.F. Bennet Oil Co.*, 110 Colo. 1, 129 P.2d 299 (1942); accord, *In re Loughnane*, 28 B.R. 940, 942 (Bankr. D.Colo.1983). Such an action fastens liability on the individual who used the corporation as a mere instrumentality for his own personal business and benefit. The liability itself arises from fraud or injustice perpetrated not on the corporation, but on third persons dealing with the corporation. 1 Fletcher Cyclopedia on the Law of Private Corporations § 41.10 at 615 (1990 ed.). Furthermore, the corporate veil is not pierced for the benefit of the corporation debtor. *Id.;* accord, *Davis v. Merv Griffin Co. (In re Merv Griffin Co.)*, 128 B.R. 78, 96 (D.N.J.1991). Hence, an alter ego action is quite distinct from a lawsuit to recover a preferential transfer based upon a breach of fiduciary duty as was involved in *Delgado* or a statutory action to hold a director liable for improper distributions.

The Court concludes that the Trustee does not own the alter ego action raised by the Plaintiffs. This Court will not follow those decisions which have allowed alter ego actions to be raised by a trustee when there is no basis for estate ownership of the action under state or common law. Although the results in those cases may have some equitable appeal, equity follows the law.

■ Finally, the Court is not persuaded by the Trustee's policy arguments. The Bankruptcy Code is intended to provide for the fair and equitable distribution of an estate's assets. It is not based upon a policy which permits a court to involve itself in judicial legislation and to deny permanently the due process rights of creditors to pursue their own claims against third parties.

In sum, the Court determines as a matter of law that summary judgment should be granted in favor of the Plaintiffs. Accordingly, it is

ORDERED that the Trustee does not have standing to pursue the Plaintiffs' claims raised in the pending state court lawsuits.

FURTHER ORDERED that this ruling does not preclude the Trustee from raising the claims of the estate against those individuals and entities involved in the Plaintiffs' pending state court lawsuits.