**David MANSON and Mark Manson**

v.

**Anca STACESCU, et al.**

**Civ. No. 5–92–600 (WWE).**

United States District Court, D. Connecticut.

March 24, 1993.

Owen Chace, Branford, CT, for plaintiffs.

John T. Walkley, Trumbull, CT, David P. Atkins, Jacob D. Zeldes, Beverly Stauffer Knapp, Zeldes, Needle & Cooper, Bridgeport, CT, James T. Cowdery, Chatigny & Cowdery, Hartford, CT, Richard A. Silver, Silver, Golub & Teitell, Lewis H. Chimes, James F. Stapleton, Matthew E. Winter, Day, Berry & Howard, Stamford, CT, Joseph Bree Burns, Elliott B. Pollack, Alan I. Scheer, Hoberman & Pollack, P.C., Hartford, CT, Jonathan D. Elliot, Kleban & Samor, P.C., Southport, CT, Richard T. Meehan, Jr., Edward J. Gavin, Meehan & Meehan, Bridgeport, CT, Ronald J. Cohen, Stephen G. Murphy, Jr., Tyler, Cooper & Alcorn, New Haven, CT, Raymond W. Ganim, Law Offices of Raymond W. Ganim, Stratford, CT, Laurence V. Parnoff, Dion W. Moore, Williams, Cooney & Sheehy, Bridgeport, CT, Kenneth W. Williams, John E. Tener, Robinson & Cole, Hartford, CT, John B. Rizo, Sr., J.C. Penney Co., Inc., Plano, TX, for defendants.

Anca Stacescu, pro se.

John Kalakay, pro se.

Jeffrey Grieves, pro se.

Richard Winter, pro se.

Donald Luzetsky, pro se.

Fred Paoletti, pro se.

Kathleen Fitzpatrick Miranti, pro se.

David Shaw, pro se.

John A. Stavola, pro se.

Louis R. Martino, pro se.

RULING ON MOTIONS TO DISMISS

EGINTON, Senior District Judge.

Plaintiffs David and Mark Manson bring this action pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, against twenty-six defendants. Twenty-one defendants have filed motions to dismiss under Fed.R.Civ.P. 12(b) on the grounds that the complaint fails to state a claim upon which relief may be granted. For the reasons set forth below, the motions will be granted.

*Facts*

In accordance with the standard for determining a motion to dismiss as set forth below, the court accepts the allegations in the complaint as true for the purposes of this motion. All of the disputes in this case arise out of alleged abuses to the Stavola–Manson Electrical Construction Company, Inc. ("Company"). Plaintiff David Manson is a 50% shareholder, director, and President of the Company, in addition to being a personal obligor on a $450,000 loan to the Company. Plaintiff Mark Manson is a personal obligor on the same loan to the Company.

The Company was incorporated in September 1985. Although defendant Jay Stavola's name is associated with the Company, he is neither an officer nor a shareholder. However, he is a director of and a real party in interest in the Company. Plaintiffs claim that the defendants, principally led by Jay Stavola, committed various felonious acts including bribery of a labor union official, attempted extortion, money laundering, threatened murder, credit card fraud, bankruptcy fraud, obstruction of justice, mail fraud, and conspiracy in violation of the RICO statute. All of these acts were part of a scheme through which defendants allegedly looted the Company to the point of bankruptcy in order to line their own pockets.

Plaintiff David Manson began to have suspicions that something was awry with the Company in the fall of 1987. At that time, he tried to examine Company signature cards and resolutions at defendant Connecticut National Bank to confirm that unauthorized checks were being issued from the Company's accounts. However, the bank refused to allow Manson to examine these documents.

In July 1988, the Company was in serious financial trouble and unable to pay its debts. Thus, David Manson, as President of the Company, petitioned for chapter eleven bankruptcy relief. Plaintiff also filed a derivative action on behalf of the Company.

Since defendants' fraudulent scheme would be exposed in the course of the bankruptcy proceeding, plaintiffs contend that defendants conspired to get the petition dismissed and the Company placed into a receivership. As part of this plan, plaintiffs contend defendant David Fitzpatrick, attorney for Jay Stavola and several other defendants, manufactured evidence and submitted it to the bankruptcy court in order to persuade the court to dismiss the petition, thereby obstructing justice and committing a fraud on the court.

Subsequently, the petition was dismissed and Fitzpatrick asked the court to approve defendant Richard Winter as a receiver for the Company. Plaintiffs allege that as part of the coverup and with the intention of protecting his clients, Fitzpatrick selected Winter with the understanding that Winter would not seek to recover debts owed to the Company by Fitzpatrick's clients or settle the debts for substantially less than the amounts owed. In January 1989, the court approved the receiver and placed the Company into receivership.

Since being appointed receiver, Winter has failed to act in the best interests of the Company and pursued only two actions on behalf of the Company. In both these cases, Winter settled for substantially less than the amount owed. When plaintiff David Manson inquired about the settlements being made, defendant Jay Stavola and others threatened plaintiff with financial ruin and murder if he refused to "back off." In addition, plaintiffs argue that because Winter allegedly is helping to cover up the fraudulent scheme of defendants, he intentionally has failed to pursue the derivative action filed by plaintiff or ask for its dismissal. As a result, plaintiffs contend they cannot obtain relief under state

law because the statute of limitations has run.

Plaintiffs allege that the above mentioned acts injured them personally, as well as the Company. Specifically, because the Company defaulted on its loan, both plaintiffs as obligors are facing foreclosure on their homes and deficiency judgment proceedings. In addition, plaintiff David Manson alleges that as a result of defendants' acts, his business credit and reputation are ruined and that his source of income eliminated.

### Discussion

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Ryder Energy Distribution v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir.1984). When deciding a motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the nonmoving party. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

### Standing

A threshold issue in this case is whether plaintiffs have standing to bring suit under RICO. Defendants claim that all of plaintiffs' injuries are derivative in nature, and therefore not actionable under the statute. The standing provision of RICO provides that "[a]ny person injured in his business or property by reason of a violation˙ of [18 U.S.C. § 1962] may sue therefor ... and shall recover threefold the damages he sustains." 18 U.S.C. § 1964(c). The Supreme Court has interpreted the causation requirement of the statute as limiting standing to plaintiffs whose injuries were proximately caused by the acts constituting the RICO violation—the so called predicate acts. *Holmes v. Securities Investor Protection Corp.*, ── U.S. ──, ──, 112 S.Ct. 1311, 1318, 117 L.Ed.2d 532 (1992); *see also Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985) (RICO plaintiff "only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation.").

A central element of proximate cause is a showing of some "direct relation between the injury asserted and the injurious conduct alleged." *Holmes*, ── U.S. at ── ── ──, 112 S.Ct. at 1318. In the Second Circuit, the acts constituting the RICO violation proximately cause a plaintiff's injury if they are a "substantial factor in the sequence of responsible causation, and if the injury is reasonably foreseeable or anticipated as a natural consequence." *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 23–24 (2d Cir.1990).

There are sound reasons for limiting standing to plaintiffs whose injuries were proximately caused by the RICO violations, particularly when the primary victim of the RICO conspiracy is a corporation. First, the proximate cause requirement serves the interests of judicial economy. "[R]ecognizing claims of the indirectly injured would force courts to adopt complicated rules apportioning damages among plaintiffs removed at different levels of injury from the violative acts, to obviate the risk of multiple recoveries." *Holmes*, ── U.S. at ──, 112 S.Ct. at 1318. When restricting standing to the corporate victim, the court need only determine one damage award, which will restore the company and it shareholders, creditors, and employees. Because "[s]uits by shareholders, guarantors, and the like may well be efforts to divert the debtor's assets—to pay off one set of creditors ... while keeping the proceeds out of the hands of the firms's other creditors," this proximate cause requirement also ensures the fairest result to all. *Mid–State Fertilizer v. Exchange National Bank*, 877 F.2d 1333, 1336 (7th Cir.1989). Finally, restricting standing to those persons most directly injured by the RICO violations prevents the potential flood of litigation that would result from a "but for" causation requirement. *Holmes*, ── U.S. at ── n. 10, ──, 112 S.Ct. at 1316 n. 10, 1316.

■ Thus, plaintiffs in this case have standing only if they have alleged injuries proximately caused by defendants' fraudulent scheme. Plaintiffs bring suit in several capacities. First, they sue as creditors of the Company. *Mid–State Fertilizer*, 877 F.2d at 1336. Because the Company could not pay its loan obligations, plaintiffs, as obligors on the loan, became personally responsible for its payment.

Generally, creditors of a bankrupt company have been denied standing under RICO because their injuries are derivative in nature. In *Mid–State Fertilizer*, for example, plaintiffs were managers and sole shareholders of a company and personally guaranteed loans made to the company. When the company became insolvent, allegedly because of the defendant bank's participation in a RICO conspiracy, plaintiffs became liable for the company's debts. The court held that plaintiffs did not have standing to sue under RICO because their injuries were not proximately caused by the RICO violations. 877 F.2d at 1335–36.

The Second Circuit has recognized a narrow exception to the general rule denying creditors standing. In *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1100–01 (2d Cir. 1988), *cert. denied*, 490 U.S. 1007, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989), a creditor of a bankrupt company was granted standing because it had suffered a direct injury. Specifically, it had been forced to defend against frivolous lawsuits filed by plaintiffs, and thus, suffered monetary loss over and above that caused by the bankruptcy of the company.[1] This exception does not apply to the instant case.

In this case, the injury to plaintiffs as obligors was only indirectly caused by defendants' scheme. The Company was the person directly harmed by the defendants' scheme. Indeed, the racketeering acts were targeted at the Company's funds—not at plaintiffs. Absent the defendants' looting of corporate funds, the Company would be able to pay its debts. "Guarantors are contingent creditors. If the firm stiffs a creditor, that creditor can collect from the guarantor; the guarantor succeeds to the original creditor's claim against the firm." *Mid–State Fertilizer*, 877 F.2d at 1336. Although the complaint alleges that defendants' acts directly injured plaintiffs, it recites no facts to show a direct injury. Rather, the facts indicate that plaintiffs' injuries would be cured if the Company recovered its assets, because it then would be able to pay its debts, thereby relieving plaintiffs of their obligation. Thus, neither plaintiff has satisfied the proximate cause requirement and, therefore, they do not have standing to sue under RICO as obligors.

■ Likewise, plaintiff David Manson does not have standing to sue as a shareholder of the Company. Generally, shareholders are prohibited from bringing individual suits under RICO. *Rand v. Anaconda–Ericsson, Inc.*, 794 F.2d 843, 849 (2d Cir.1986), *cert. denied*, 479 U.S. 987, 107 S.Ct. 579, 93 L.Ed.2d 582 (1986). This is true even when the plaintiff is the sole shareholder of the injured corporation. *Sound Video Unlimited, Inc. v. Video Shack, Inc.*, 700 F.Supp. 127, 136 (S.D.N.Y.1988); *see also Sirinakis v. Colonial Bank*, 600 F.Supp. 946, 953 n. 10 (S.D.N.Y.1984) (president and principal shareholder of shipping company could not claim company's tort and contract damages as his own).

There are cases in the Second Circuit in which a shareholder was permitted to bring a RICO action. In these cases, the plaintiffs were harmed directly, as well as by the economic downfall of the corporation. For example, minority shareholders have been granted standing under RICO when a majority shareholder has violated a fiduciary duty owed directly to plaintiff, in addition to committing a fraud on the company which caused plaintiff's stock to depreciate in value. *See Sound Video Unlimited, Inc.*, 700 F.Supp. at

---

1. Judge Posner recently explained the holding in *Bankers Trust*. "*Bankers Trust* does not hold that if RICO defendants plunder a corporation that they control, driving it into bankruptcy, in order to elude a specific, pesky creditor, the creditor has standing to maintain a suit under RICO. The first level of injury is to the corporation, and the creditor suffers only because he has a claim against it. The point of *Bankers Trust* is that the plundering of the bankrupt corporation was only one means by which the defendants tried to thwart the creditor-plaintiff, in addition they harassed plaintiff with frivolous lawsuits." *Wooten v. Loshbough*, 951 F.2d 768, 771 (7th Cir.1991).

136; *Fidelis Corp. v. Litton Industries, Inc.*, 293 F.Supp. 164, 168–69 (S.D.N.Y.1968); *see also Yanow v. Teal Industries, Inc.*, 178 Conn. 262, 282 n. 9, 422 A.2d 311 (1979) ("If the controlling majority stockholder seeks to injure the minority stockholder through the means of looting the corporation or so wrecking it that the minority stockholder would get nothing out of his assets, the claim resulting therefrom is sufficient to constitute an individual action.").

In this case, no breach of fiduciary duty is alleged. The facts in the complaint show that plaintiff's injury as a stockholder was caused by the bankruptcy of the Company. Defendants' conduct was designed to injure the Company. Thus, plaintiff's harm is derivative in nature. Because the complaint fails to allege any direct injury to plaintiff as a stockholder, harm separate and distinct from the injury to the Company, plaintiff does not have standing to sue under RICO in this capacity.

■ Finally, plaintiff David Manson does not have standing to sue as President and director of the Company. Employees of a bankrupt company frequently have been precluded from bringing a civil RICO action because their injuries were not proximately caused by the alleged misconduct. This is true even if they were harassed and fired for trying to report the fraud. For example, the court in *Willis v. Lipton*, 947 F.2d 998, 1000 (1st Cir.1991), held that the plaintiff did not have standing under RICO because his loss of employment, damage to reputation, and legal expenses were not proximately caused by the alleged RICO violations. *See also Warren v. Manufacturers Nat'l Bank of Detroit*, 759 F.2d 542, 544–45 (6th Cir.1985) (sole owner of corporation who lost employment when corporation was forced into bankruptcy by RICO violations cannot recover for loss of employment). In *Norman v. Niagara Mohawk Power Corp.*, 873 F.2d 634, 635–37 (2d Cir.1989), the court denied standing to an employee who was suffering intimidation and harassment for blowing the whistle on his employer's fraudulent activity. *See also Nodine v. Textron, Inc.*, 819 F.2d 347, 348–49 (1st Cir.1987) (no standing for employee who was fired for reporting a RICO scheme because his injury did not flow directly from the predicate acts); *Hecht*, 897 F.2d at 24 (stockbroker was " 'neither the target of the racketeering enterprise nor the competitor[ ] nor the customer[ ] of the racketeer[s],' " thus, his loss of income was not proximately caused by the RICO violations) (citation omitted).[2]

■ The complaint alleges few facts to support plaintiff's allegation of direct injury. Rather, most of the complaint describes the various methods defendants used to steal from and bankrupt the Company. The only acts directed at plaintiff were threats made to intimidate plaintiff and stop him from investigating the alleged scheme. The murder threat does not cause the type of injury protected by the civil RICO statute. Business and property are the only interests protected by RICO. *Bennett v. Centerpoint Bank*, 761 F.Supp. 908, 916 (D.N.H.1991), *aff'd*, 953 F.2d 634 (1st Cir.1991); *see also Rylewicz v. Beaton Services, Ltd.*, 698 F.Supp. 1391, 1395–96 (N.D.Ill.1988) ("The phrase 'business or property' excludes personal injuries or political damages."), *aff'd*, 888 F.2d 1175 (7th Cir.1989); *Grogan v. Platt*, 835 F.2d 844, 847 (11th Cir.1988) ("In our view, the ordinary meaning of the phrase 'injured in his business or property' excludes personal injuries, including pecuniary losses therefrom."), *cert. denied*, 488 U.S. 981, 109 S.Ct. 531, 102 L.Ed.2d 562 (1988); *Zimmerman v. HBO Affiliate Group*, 834 F.2d 1163,

2. Manson has alleged that defendants obstructed justice in the course of covering up their fraudulent scheme. While the First Circuit has noted that when an employee alleges obstruction of justice, he might satisfy the direct injury requirement, the court did not elaborate on this point and dismissed the complaint because the plaintiff had waived his right to bring a claim for obstruction of justice. *Nodine*, 819 F.2d at 349 n. 3. Similarly, in *Kramer v. Bachan Aerospace Corp.*, 912 F.2d 151, 155–56 (6th Cir.1990), the court acknowledged that an obstruction of justice claim may be sufficient to grant standing to an employee discharged for reporting a fraud, but dismissed the complaint because the plaintiff had not adequately demonstrated defendants' specific intent to obstruct justice. This court declines to elaborate on this dicta because it is unclear how a claim of obstruction of justice might satisfy the proximate cause requirement, and because the Second Circuit has consistently resisted granting standing to plaintiffs like Manson.

1169 (3d Cir.1987) (mental distress is not actionable injury under RICO). Similarly, the threat of financial ruin did not cause an actionable injury to Manson. This threat was similar to the threats and carrying out of threats to discharge employees who reported fraudulent schemes or refused to participate in a RICO conspiracy, in that it was made after the company was looted and for the purpose of preventing plaintiff from exposing the fraud. *See Nodine,* 819 F.2d 347; *Hecht,* 897 F.2d 21. While the threat in this case was directed at plaintiff, the RICO scheme alleged was directed at the Company. Thus, any injury resulting from the threat was an indirect consequence of the defendants' scheme to loot the Company and line their own pockets. Plaintiff's loss of income from his role as President and director, therefore, was an indirect result of the conspiracy and subsequent bankruptcy of the Company.

### Conclusion

For the reasons set forth above, the court holds that plaintiffs do not have standing to sue under RICO because their injuries were not proximately caused by the alleged RICO conspiracy. Accordingly, the motions to dismiss [41, 73, 115, 126, 141, 144, 159, 161, 177, 179, 181, 183, 185, 187, 189, 200, 203, 215, 200] are GRANTED.