FRANKLYN ARRIGONI ET ALS. *v.* SALVATORE
ADORNO ET ALS.

MALTBIE, C. J., JENNINGS, ELLS, DICKENSON and INGLIS, Js.

Argued November 5, 1942—decided March 5, 1943.

*Howard W. Alcorn,* for the appellant (plaintiff The S. & S. Corporation) in a companion case.

*W. L. Hadden* and *Carlos Ellis, Jr.,* appeared for the appellants (named plaintiff et als.).

*Robert P. Butler,* for the appellees (defendants).

ELLS, J. This action was brought by certain stockholders of a corporation, the Middletown Theatres, Inc., against the named defendant Adorno, a director and officer of the corporation, on the ground of a breach of fiduciary duty which he owed to it, claiming damages, an accounting, the setting aside of a cer-

tain lease and other relief. The Middletown Theatres, Inc., was later joined as a party plaintiff. The trial court found that Adorno had been intrusted with the matter of finding a suitable party to lease three theaters which were being operated by the corporation under leases it held, and that he secured a party who entered into an agreement with the corporation and the owners of the theaters to lease and operate them. It concluded that Adorno did not fraudulently conceal other offers which he had received for the lease of the theaters but, on the contrary, made a disclosure that he had received other offers which was sufficient to put reasonably prudent persons on inquiry as to what they were. It also concluded that Adorno did violate his duty in not disclosing that he would have a large personal interest in the results of the operation of the theaters under the lease, but that any claim to recover for that breach of duty was barred by the Statute of Limitations. Judgment was rendered for the defendants, and the plaintiffs have appealed. The only questions presented to us are the correctness of the conclusions of the trial court that Adorno sufficiently disclosed the other offer he had received and that any action for the failure to disclose his interest in the transaction was barred by the Statute of Limitations.

The finding consists of two hundred paragraphs and has not been attacked. The issues are narrow and an extended statement of the complicated facts is unnecessary. Adorno owned and controlled the Palace Theatre in Middletown. The plaintiffs the Saracenos owned the Capitol Theatre. The plaintiff Arrigoni owned the Middlesex Theatre. Adorno was operating his theater at a substantial profit in 1930 and 1931, but the plaintiffs were losing money. One of the plaintiffs suggested to Adorno that it might be a good

idea for the three theaters in Middletown to get together. Adorno was reluctant but finally agreed. The plaintiffs were engrossed in other enterprises; Adorno was an experienced and successful theater operator; the business was his livelihood, and he insisted that he be made general manager of the new venture. In 1932 the combination was effected by forming the Middletown Theatres, Inc., in which each had a third interest, and each of the three theaters was leased to the new corporation. Adorno was elected treasurer and general manager. The depression was at its worst and business was bad. The parties held many conferences, at which Adorno proposed various remedies and finally suggested that each owner take back his theater. The plaintiffs disapproved of all the proposals and said that as they were going to lose money it might be better to lease the three theaters to some third party. Adorno said he knew what he got the last time he leased his theater to another and he would not lease it again unless he went with it. He further stated that the plaintiffs were well-to-do, that he was broke, that it was the only business he knew, that he had been in it for twenty-five years and that he depended upon the profits and rentals of the theaters, his contract as general manager and the employment of members of his family for his livelihood.

It was finally decided, however, to lease the three theaters to a third party if one could be found. The matter of finding one was intrusted to Adorno. He received many offers. He freely and openly, and without pledge of secrecy, told each offerer that he would not be a party to the making of a lease unless he went with it as a part owner in joint control of the enterprise. A. H. Lockwood was introduced to Adorno and was recommended as a very good operator who could make the three theaters pay if anyone could.

Adorno told him that the plaintiffs each had a third interest, and upon being asked where they could be found Adorno told him. Lockwood went to see the plaintiff Arrigoni. Subsequently, in early May, 1933, Adorno had frequent conferences with Lockwood. He told Lockwood he would be interested only if he, Adorno, was a party to the lease on a fifty-fifty basis. Sometime before May 16, 1933, Lockwood made two propositions to Adorno: that Lockwood pay certain stipulated rentals and a bonus of $15,000 for the good will of the theaters, to be divided equally among the owners, and $10,000 to Adorno for the loss of his contract as general manager of the old corporation; or that Lockwood would take Adorno as a partner on a fifty-fifty basis, Adorno to pay one-half of the bonus. Adorno accepted the latter proposition. He told the plaintiffs that Lockwood had made an offer for the purchase of the lease at certain stipulated rentals and would pay a bonus of $15,000 to be divided equally. The details he gave were correct, but he did not tell the plaintiffs about his one-half interest. This is the first source of the ensuing trouble. He also told them that he had received other offers but considered this the best one because the person making it was a good theater man and financially responsible, and that he thought him to be the most desirable tenant. None of the plaintiffs ever asked Adorno who made the other offers, or how much was offered, or whether any cash was offered, or how long a lease was wanted, or any single question about these offers; none of them had ever asked a single question about the offers to the time of trial in 1941. The alleged failure to disclose the details of these offers is the other source of trouble.

The three owners, their attorneys, Lockwood and his attorney held extensive conferences. An agreement to lease was finally drawn, all examined it in minute

detail and it was signed by the theater owners and Lockwood. This was on May 16, 1933. The meeting lasted from midmorning to late evening. On May 17th, Adorno entered into a written agreement whereby he accepted the option made by Lockwood for Adorno's continuance in the business on an even basis. The agreement had been drawn on or before May 16th. On May 27th, a corporation was formed by Lockwood, one-half the shares of stock in which were, in the absence of Adorno, issued to certain persons to hold for him. On May 29th, they all met again and executed the lease in accordance with the terms of the previous agreement, the lease being executed by the corporation Lockwood had organized instead of by him personally. After it was executed and as it lay on the attorney's desk, Adorno's lawyer told the plaintiffs that Adorno was an equal purchaser with Lockwood. The plaintiff Arrigoni remarked to his lawyer that he would not have signed had he known this fact, whereupon the attorney replied: "You wanted to lease it. What do you care if Mr. Adorno is with them or not?" The plaintiffs the Saracenos were surprised. Lockwood said to them all: "If you want to be a part of this corporation, you'll be welcome to come in with us." Adorno said: "Why don't you?" They replied: "We are glad to get out; got too many other businesses to take care of." They made no further protest. That night at dinner Salvatore Saraceno told Adorno he was glad the thing was over and hoped Adorno and Lockwood would be successful.

Times improved and the new enterprise made money. The parties, all born in Italy, had been and continued to be good friends; so friendly, the finding is, that in 1935 the Saracenos and Adorno took a trip to Europe together and in the course of it visited the city of their origin in Italy.

The first question concerns the claim that Adorno fraudulently concealed from the plaintiffs the other offers he had received. The trial court in its memorandum of decision conceded that Adorno occupied a position requiring him to disclose these other offers, but concluded that he fulfilled this duty because he disclosed sufficient facts to put the plaintiffs, as reasonably prudent persons, upon notice and inquiry. It is the duty of a director in such dealings with a corporation to made a full and frank disclosure. 1 Mechem, Agency (2d Ed.), § 1207. The extent to which that will be affected by the failure of the party adversely interested to pursue inquiries seems very limited. Bower, Actionable Non-Disclosure, p. 179, § 203; see *White* v. *Miller*, 111 Conn. 53, 57, 149 Atl. 237. We are reluctant, even under the unusual facts of this case, to relax the high standard of conduct which the law requires in a situation like this. We decide this aspect of the case upon another ground.

The sole issue on this cause of action is whether the plaintiff had suffered any damage. The situation before us is not one where the plaintiffs claim that they have received something which is of less value than it would have been had it not been for fraud practiced upon them, but the necessary basis of their claim is that had it not been for the fraud they would not have entered into the Lockwood lease but into another one which was proposed, and that they have therefore been damaged because they would have been better off had they not done so. It may be conceded, as the plaintiffs claim, that one of the other offers, if considered merely from the standpoint of rentals to be paid, would, if the terms of the lease were carried out, have brought a greater financial return to the plaintiffs. But, in considering an offer to take a long-term theater lease, the character, ability and experience of

the tenant would be important factors in determining whether or not it was advantageous to accept it. These factors were clearly in Adorno's mind when he stated to the plaintiffs that Lockwood was a good theater man, financially responsible and the more desirable tenant, particularly in view of certain experiences the finding relates Adorno had had in leasing his theater. No doubt these were the considerations in the mind of the trial court when it concluded that it did not appear that any offer received by Adorno was any better than, if as good as, that of Lockwood; and this conclusion is not invalidated by the fact that the rentals to be paid under another offer were larger than those provided in the Lockwood lease. The trial court has not found that, had it not been for the failure of Adorno to disclose the offers received, the plaintiffs would probably have accepted this other offer; and in view of the conclusion which, as we have stated, it did reach, we certainly could not so hold. Without a finding to that effect, there is no basis on the record for a conclusion that the failure of Adorno to disclose the other offers received caused the plaintiffs any damage.

The trial court decided that Adorno committed a breach of his duty in not disclosing to the plaintiffs that he was to be a part owner with Lockwood of the lease of the three theaters, that a cause of action arose for such breach, that the plaintiffs knew of the breach on May 29, 1933, but that the cause of action was barred by §§ 1677c and 1683c of the Cumulative Supplement, 1935. The plaintiffs' only quarrel is with the time element, their claim being that the court's conclusion as to the date of the accrual is not supported by the subordinate facts, and that Adorno's breach of duty continued actively after May 29, 1933, and until 1939. There is nothing in the finding to support this contention. The only breach of duty found, and the

only one claimed, is that which was disclosed immediately after the lease was signed. Had Adorno disclosed his interest a few minutes earlier, there would have been no breach of duty. The plaintiffs had full notice of the breach of duty on May 29, 1933. There was, at that time, a disclosure of all the essential elements of the breach of duty. The court's conclusion that the cause of action accrued at that time cannot be disturbed. *Brackett* v. *Perry,* 201 Mass. 502, 505, 87 N. E. 903; *Davis* v. *Willey,* 263 Fed. 588, 590; 3 Fletcher, Cyclopedia of Corporations, § 1306; 37 C. J. 939, § 309.

A director and officer undoubtedly occupies a fiduciary relationship to the corporation and its stockholders, but he is not a trustee in the strict sense of the term. *Mallory* v. *Mallory Wheeler Co.,* 61 Conn. 131, 138, 23 Atl. 708; 3 Fletcher, op. cit., p. 146. "Directors," said Judge Lurton when a member of the Supreme Court of Tennessee, "are not express trustees. . . . At most they are implied trustees in whose favor the statutes of limitations do run." *Wallace* v. *Lincoln Savings Bank,* 89 Tenn. 630, 649, 15 S. W. 448. The misconduct of the defendant was not such that he ought to be treated as if he had violated the terms of an express trust, as in *McDonald* v. *Hartford Trust Co.,* 104 Conn. 169, 189, 132 Atl. 902; and even though this cause of action be regarded as one in equity, equity here should follow the law, 4 Pomeroy, Eq. Jur. (4th Ed.), § 1441. The trial court was correct in its conclusion that the plaintiffs were barred of their remedy because the period fixed in the Statute of Limitations had passed. *Lippitt* v. *Ashley,* 89 Conn. 451, 477, 479, 94 Atl. 995; 3 Fletcher, op. cit., § 1301.

There is no error.

In this opinion the other judges concurred.