William CHANOFF, et al., Plaintiffs,

v.

UNITED STATES SURGICAL CORP., et al., Defendants.

Civ. No. 3:93CV01522 (AHN).

United States District Court, D. Connecticut.

Jan. 4, 1994.

---

Gregory Markel, Michael Carlinsky, Barbara Moses, Orrick, Herrington & Sutcliffe, New York City, Thomas Byrne, Pullman & Comley, Bridgeport, CT, for plaintiffs.

Charles Sims, Dale Schreiber, Walter Bard, Proskauer, Rose, Goetz & Mendelsohn, New York City, Patricia Carpenter, Joan Kupersmith, Joy Beane, James Stapleton, Day, Berry & Howard, Stamford, CT, for defendants.

## RULING ON MOTION TO DISMISS

NEVAS, District Judge.

The plaintiffs, William, David and Rachel Chanoff, and Harriet Fingerote ("plaintiffs"), bring this action against the defendants, United States Surgical Corporation ("USSC"), Leon Hirsch, Turi Josefsen, Bruce C. Lustman and Marianne Scipione (collectively "defendants"), alleging federal and state claims of securities fraud.

Presently pending is the defendants' motion to dismiss all counts of the complaint [doc. # 18]. For the reasons that follow, the motion is granted with respect to Counts III, IV, V, VIII and David Chanoff's, Rachel Chanoff's and Harriet Fingerote's claims contained in Counts I, II, VI and VII. The motion is denied with respect to William Chanoff's claims contained in Counts I, II, VI and VII only insofar as he claims damages flowing from his purchase of 2000 shares of USSC stock.

## STANDARD OF REVIEW

When considering a Rule 12(b)(6) motion to dismiss, the court is required to accept as true all factual allegations in the complaint and draw inferences from these allegations in the light most favorable to the plaintiff. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Easton v. Sundram,* 947 F.2d 1011, 1014–15 (2d Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992). Dismissal is warranted only if, under any set of facts that the plaintiff can prove consistent with the allegations, it is clear that no relief can be granted. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Frasier v. General Elec. Co.,* 930 F.2d 1004, 1007 (2d Cir.1991). "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his or her claims." *United States v. Yale New Haven Hosp.,* 727 F.Supp. 784, 786 (D.Conn.1990), citing *Scheuer,* 416 U.S. at 232, 94 S.Ct. at 1683.

## FACTS

With this standard in mind, the facts as alleged by the plaintiffs are as follows. The plaintiff William Chanoff is a former director of USSC; the plaintiffs Rachel Chanoff, David Chanoff and Harriet Fingerote are, respectively, William Chanoff's daughter, son and close friend. The individual defendants are directors and officers of USSC. As of January, 1992, the plaintiffs held approximately 400,000 shares of USSC stock. In the face of rising competition, USSC developed and implemented a third-party system of distribution (the "Just in Time Program," or "JIT") that radically changed the process by which USSC sold and distributed its products and had the following impact: 1) JIT caused a temporary surge in sales which was followed by a sharp slump, 2) the program required USSC to sell at discount to distributors thereby depressing long-term profit margin and 3) additional sales were lost due to the elimination of the direct interaction between the USSC sales force and customers which had been an effective sales tool in the past.

Plaintiffs allege that USSC top executives caused USSC to conceal the competitive pressures and the implementation of the JIT program, as well as the financial impact of both of these factors. Plaintiffs contend that USSC not only omitted reference to these facts in their reports, but also affirmatively misled investors by denying suggestions that competition was a problem, continuing to refer to its direct sales efforts and predicting unrealistic future sales growth. In addition, plaintiffs allege that defendant Scipione specifically misled William Chanoff through false and misleading statements made to him in personal letters and telephone conversations. At the same time, defendants sold over 1.7 million shares of personally owned USSC stock.

As a result of the defendants' misrepresentations, plaintiffs allege that they refrained from selling or hedging USSC stock in 1992,

and borrowed against their stock in margin accounts. In addition, plaintiff William Chanoff, purchased 2000 shares of USSC stock in October of 1992. On April 7, 1993, USSC acknowledged that it had implemented the JIT program and that the program would have a negative impact on the company's financial performance, particularly in the second and third quarters. After this disclosure, the stock lost almost ⅓ of its market value in a single day. Plaintiffs allege that after the disclosure, their stock holdings dropped in value from $50 to $12 million, and William Chanoff suffered emotional distress and an immediate decline in his health.

## DISCUSSION

Defendants' arguments are threefold: (1) the state claims for the defendants' failure to disclose to William Chanoff should be dismissed as they are preempted by the federal securities laws, (2) the state claims should be dismissed on state law grounds and (3) the federal claims are not viable to the extent that they seek damages for shares neither purchased nor sold. These arguments shall be addressed seriatim.

### I. State Claims

The plaintiffs' state claims are as follows: in Counts I and II, plaintiffs allege causes of action sounding in common law fraud; in Count III, plaintiffs allege state common law claims for breach of fiduciary duty; in Counts IV and V, plaintiffs allege state common law claims for negligent misrepresentation and negligence; and in Count VIII, plaintiffs allege breach of the Connecticut Uniform Securities Act, Conn.Gen.Stat. § 36–472. The state claims are based on both pendent and diversity jurisdiction. The defendants seek to dismiss all of these claims.

### A. Preemption

The defendants argue that the plaintiffs' state claims for fraud, negligence and breach of fiduciary duty are preempted by the federal securities laws to the extent that the state claims are premised on the defendants' alleged duty to disclose inside information to William Chanoff. Such a duty, defendants

argue, is directly inconsistent with federal securities law which prohibits selective disclosure and which is designed to foster an honest market in which investors have equal access to information. The court only partially agrees.

Generally, preemption is a question of congressional intent. Federal law preempts state law only when Congress acts to "occupy the field," or when the state claims are in direct conflict with the federal law. *Florida Lime & Avocado Growers v. Paul*, 373 U.S. 132, 142–43, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963), *reh'g denied*, 374 U.S. 858, 83 S.Ct. 1861, 10 L.Ed.2d 1082 (1963). It is settled, however, that Congress did not act to occupy the field of securities; rather, the federal law preserved the states' broad powers to regulate areas within the field. *See, e.g., Baker & Watts v. Miles & Stockbridge*, 876 F.2d 1101, 1106 (4th Cir. 1989). Thus, to find preemption in this instance, the court must find actual conflict between the state and federal laws; that is, either that compliance with both state and federal law is impossible, or that the state law obstructs the congressional objectives underlying the federal law. *See Florida Lime & Avocado Growers*, 373 U.S. at 142–43, 83 S.Ct. at 1217; *Baker & Watts*, 876 F.2d at 1106; *Donmar v. Southern Nat'l Bank*, 828 F.Supp. 1230, 1234–35 (W.D.N.C. 1993). It should be noted that the fact "[t]hat state common law proscribes certain behavior considered legal under the [federal act] is not dispositive," *Seoud v. E.F. Hutton & Co.*, 720 F.Supp. 671, 680 (N.D.Ill.1989), because states are free to impose more restrictive standards than the federal standards. Indeed, courts should apply a presumption against preemption when the underlying state law concerns an area of traditional state regulation such as public health and safety. *See, e.g., H.P. Welch Co. v. New Hampshire*, 306 U.S. 79, 84, 59 S.Ct. 438, 440, 83 L.Ed. 500 (1939). However, preemption is compelled where "states require behavior prohibited by federal enactments." *Seoud*, 720 F.Supp. at 680. In *Baker & Watts*, for example, the court found that while state common law claims are not expressly preempted by the federal securities

laws, the plaintiff's state claim for indemnification was preempted as it was inconsistent with federal securities law which does not provide for such relief. *Baker & Watts,* 876 F.2d at 1107. *See also Donmar,* 828 F.Supp. at 1236–38 (finding common law claims of negligence and wrongful payment preempted by Federal Reserve Board Regulation J.)

■ Similarly, here, the court does not find that the plaintiffs' common law claims are per se preempted. Insofar as the claims are premised on the defendants' duty to disclose to the public and shareholders generally, such claims may be entirely consistent with the federal securities regulatory scheme.

■ The court agrees, however, that to the extent that plaintiffs' state claims are based on defendant Scipione's duty to disclose to William Chanoff during their personal exchanges, these claims are preempted by the federal securities laws which proscribe such selective disclosure. *Cf. In re Cady, Roberts & Co.,* 40 SEC 907; 1961 WL 3743, *6 (1961) (finding that insider's duty to abstain or disclose under federal securities laws superseded any fiduciary obligations broker/insider had to his customers). *See also Bateman Eichler v. Berner,* 472 U.S. 299, 105 S.Ct. 2622, 2630, 86 L.Ed.2d 215 (1985); (selective disclosure by insider often constitutes breach of fiduciary duty to corporation); *Elkind v. Liggett & Myers, Inc.,* 635 F.2d 156, 169 (2d Cir.1980) (investors have no absolute right to inside information, only to honest market in which investors have equal access to information); *SEC v. Texas Gulf Sulphur Co.,* 401 F.2d 833, 848 (2d Cir.1968) (en banc); *cert. denied,* 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969) (articulating "disclose or abstain" rule prohibiting trading on inside information).

Indeed, had defendant Scipione disclosed to William Chanoff the material nonpublic information that the plaintiffs allege she should have, and had William Chanoff taken action on the basis of that information, as the plaintiffs further allege he would have, both defendant Scipione and William Chanoff would have exposed themselves to liability under the federal laws against the tipping of inside information. *See Dirks v. SEC,* 463 U.S. 646, 664, 103 S.Ct. 3255, 3266, 77 L.Ed.2d 911 (1983) ("elements of fiduciary duty and exploitation of nonpublic information also exist when an insider makes a gift of confidential information to a trading relative or friend. The tip and trade resemble trading by the insider himself. . . .").

In response, the plaintiffs argue that concealment of information cannot be justified on the basis that defendants did not disclose information to other shareholders; rather, by selling stock while in possession of material inside information, plaintiffs contend, the defendants assumed the duty to disclose to all potential buyers. In essence, the plaintiffs' argue that the disclosures that defendant Scipione should have made to William Chanoff cannot be characterized as inside information, or "tipping," because defendants should have disclosed the same information to the public. Yet this argument is not persuasive: Even if the defendants fraudulently misled the public by failing to disclose the information, this does not alter the fact that the information was nonpublic "inside" information at the time defendant Scipione communicated with William Chanoff. As such, it could not, under the federal law, be legally disclosed to William Chanoff alone.

On this point, the SEC's opinion in *In re Cady, Roberts & Co.* is instructive. In that case, the SEC found that a broker violated the anti-fraud provisions of the 1934 Securities Exchange Act in executing sales orders on discretionary accounts based on inside information. In a conceptual mirror image to the plaintiffs' arguments here, the broker in *Cady* contended that he was merely acting pursuant to his fiduciary duty to his customers which overrode any obligations he may have had to the public. The SEC rejected this contention and held that while the broker "undoubtedly occupied a fiduciary duty to his customers, this relationship could not justify any actions by him contrary to law." *Cady, Roberts & Co.,* 1961 WL 3743, at *6. As the SEC explained, "even if we assume the existence of conflicting fiduciary obligations, there can be no doubt which is primary. . . . clients may not expect of a broker the benefits of his inside information at the expense of the public generally." *Id.* So too

here, the plaintiffs may not claim they are entitled to benefit from the special relationship between William Chanoff and USSC officers or directors, insofar as the benefit they claim is contrary to established federal standards.

The court recognizes that defendant Scipione could have chosen not to speak with William Chanoff or could have disclosed the information to Mr. Chanoff and then disclosed it to the public,[1] both of which options would be consistent with the federal law. However, even if physical compliance with the state and federal standards were not physically impossible, the court finds that the selective duty to disclose implicit within the plaintiffs' state claims clearly undermines the congressional objectives underlying the federal scheme. *See Florida Lime & Avocado Growers,* 373 U.S. at 142–43, 83 S.Ct. at 1217; *Baker & Watts,* 876 F.2d at 1106. While Congress intended to encourage public dissemination of material information, such public disclosure is not furthered by recognizing a "unique relationship" or special duty to disclose to influential shareholders like William Chanoff.[2]

Therefore, to the extent that plaintiffs' state claims are premised on a selective duty to disclose arising out of the alleged "unique relationship of trust and confidence between defendant Scipione ... and William Chanoff," (*see, e.g.,* Compl. ¶¶ 111, 116, 121), the claims are preempted.

**B. *Remaining State Claims: Damage and Standing***

Although what remains of the state claims may not be preempted, most of the claims fail on other grounds. Specifically, the court agrees with the defendants, that plaintiffs, with limited exception, have not alleged cognizable injury or damage that could be construed as directly or proximately caused by

1. The court agrees with the defendants, however, that William Chanoff would not be entitled to take advantage of any information differential created in the time between these hypothetical disclosures.

2. Moreover, even if such a duty could be recognized, the court would be hard pressed to find

the alleged misconduct as required to sustain the common law causes of action.

In the plaintiffs' general allegation of damages, incorporated by reference in each of the counts, the plaintiffs allege the following injuries stemming from the defendants' conduct: (1) all plaintiffs declined to sell or hedge their USSC stock which has declined in value since January, 1992, (2) William Chanoff purchased 2000 additional shares of USSC stock at artificially inflated prices, (3) William Chanoff, Rachel Chanoff and Harriet Fingerote received margin calls as a result of declines in the stock's value, (4) William Chanoff, Rachel Chanoff and Harriet Fingerote incurred significant tax liabilities that could have been avoided had they known the truth and (5) William Chanoff suffered emotional distress and a decline in his health. (*See* Compl. ¶¶ 96–99.) With these claimed damages in mind, the court now turns to the specific counts.

**1. *Fraud: Counts I & II***

To state an action for fraud, a plaintiff must allege that "(1) a false representation was made as a statement of fact; (2) the statement was untrue and known to be so by its maker; (3) the statement was made with the intent of inducing reliance thereon; and (4) the other party relied on the statement to his detriment." *Billington v. Billington,* 220 Conn. 212, 217, 595 A.2d 1377 (1991). It is settled, however, that to recover for fraud, as for all torts generally, a plaintiff must allege injury that is the direct and proximate result of the alleged misconduct. *See, e.g., Holmes v. Securities Investor Protection Corp.,* —— U.S. ——, ——, 112 S.Ct. 1311, 1317, 117 L.Ed.2d 532 (1992) (common law actions require direct relation between the injury asserted and the injurious conduct alleged); *Applied Data Processing Inc. v. Burroughs Corp.,* 394 F.Supp. 504, 510–11 (D.Conn.1975) (Newman, J.); *Kilduff v. Adams, Inc.,* 219 Conn. 314, 323, 593 A.2d 478 (1991); *Morrell*

that the duty extended to William Chanoff's friends and relatives. Thus, even if the claims were not preempted, it is unlikely that the plaintiffs other than William Chanoff would be able to sustain claims based on statements made by defendant Scipione directly to William Chanoff.

*v. Wiley,* 119 Conn. 578, 582, 584, 178 A. 121 (1935). The Connecticut Supreme Court has explained that "those results are proximate which must be presumed to have been within the contemplation of the defendants as the probable consequence of his fraudulent representations." *Kilduff,* 219 Conn. at 323–24, 593 A.2d 478. *See also Holmes,* —— U.S. at ——, 112 S.Ct. at 1317 ("the notion of proximate cause reflects 'ideas of what justice demands, or of what is administratively possible and convenient.'" (citation omitted)).

■ Thus, as William Chanoff claims that he was induced to buy additional shares of USSC stock at artificially inflated prices because of the defendants' misconduct, he has alleged injury that may at least be found to be proximately related to the alleged fraud, and has therefore stated a claim to the extent that he seeks relief for such injury.[3]

■ The remaining claims made by William Chanoff and the other plaintiffs suffer a different fate. First, the claims for damages based on the plaintiffs' failure to sell or hedge their stock are too speculative to be actionable. "It is an established principle that a plaintiff cannot recover profits which might have been realized if he had not been deceived, unless there is evidence by which such profits can be estimated with reasonable certainty." *Morrell,* 119 Conn. at 584, 178 A. 121; *see also Pacelli Bros. Trans. v. Pacelli,* 189 Conn. 401, 411, 456 A.2d 325 (1983). Along these lines, this circuit has recognized that the "case of a defrauded securities buyer, whose gain was speculative, is surely different from the case of a seller who does not receive the price for which he bargained. The distinction lies in the ability to determine damages with certainty." *Osofsky v. Zipf,* 645 F.2d 107, 112 (2d Cir.1981); *appeal after remand,* 725 F.2d 1057 (2d Cir.1984). Here, the claim for damages is further attenuated as plaintiffs allege a separate damages claim for shares, neither bought nor sold, but merely retained.

In addition, the defendants argue, somewhat compellingly, that the plaintiffs have not alleged cognizable loss because plaintiffs cannot claim the right to profit from what they allege was an unlawfully inflated stock value. In rebuttal, the plaintiffs argue that had the disclosures been timely made, in the early stages of the JIT program, the market would not have responded as drastically as it did when the disclosures were made in 1993, thereby characterizing their loss as the difference in the impact of the disclosures on the market, not lost profits. Yet this argument is merely a creative costume for the lost profits claim, which courts have clearly rejected.[4] Moreover, even if the court accepted plaintiffs' attempt to distinguish their claim, the claim would not be actionable as it is not subject to even reasonable estimation; rather, because, as the plaintiffs conceded at oral argument, there is not one precise point at which the defendants' duty to disclose information concerning the JIT program attached, and in light of the difficulty in quantifying the value of earlier disclosure, the actual calculation of such damages would be intractable at best.

■ Nor can it be said that the margin calls, also claimed as damages, were the direct result of the alleged fraud. The court simply cannot presume that such margin calls were "'within the contemplation of the defendant[s] as the probable consequence of [their] fraudulent representations.'" *Applied Data Processing,* 394 F.Supp. at 509 (citation omitted). Rather, margining is an aggressive and high-risk investment strategy that is not only based on the prospects of a particular stock but on numerous factors, including the relative value of the stock compared to the stocks or assets against which it is margined. Indeed, were the court to extend liability to include recovery for margin

---

**3.** The court notes that any damages would have to be limited so as to avoid any double recovery under the Rule 10b–5 and the common law fraud claims.

**4.** As the Fifth Circuit has stated, "if the [plaintiffs] had received this information and sold their stock before the public was made aware [of this information], such a profit would have resulted from insider trading in violation of the securities laws. It is too much to ask the court to recognize an injury based on a lost profit to which no one was lawfully entitled." *Crocker v. FDIC,* 826 F.2d 347, 351 n. 6 (5th Cir.1987); *cert. denied,* 485 U.S. 905, 108 S.Ct. 1075, 99 L.Ed.2d 235 (1988).

calls, it would effectively shift the risks assumed by the margining investor to the corporate officers, and the court finds no basis for such arbitrary risk spreading.

■ Furthermore, even if it could be said that margining would be a foreseeable result of the alleged misconduct, the consequent margin calls are too remote or indirect an injury to be actionable. Typically, margin accounts are supported by a portfolio of assets; to the extent that a portfolio does contain other assets, those assets, in addition to the margined stock, would also have impact on the marginable asset base. Thus, while a decline in a margined asset might weaken the overall asset base, the impact of such a decline is a result of a combination of factors and seems well within the risk assumed by undertaking such an aggressive investment strategy. In short, the losses suffered as a result of the margin calls were directly related to the plaintiffs' investment strategy, and not the alleged fraud.

■ Plaintiffs William Chanoff, Rachel Chanoff and Harriet Fingerote further allege that they incurred significant tax liabilities which they could have avoided had they been privy to the undisclosed information. The defendants challenge the logic of this claim; yet even assuming, as the court must in the context of this motion to dismiss, that the plaintiffs did incur increased liability, the loss of tax benefits is not recoverable as damages. First, because tax benefits "accrue only if the tax deductions or credits the investment throws off are *combined* with income generated by the investor or taxes owed on such income ...," *Randall v. Loftsgaarden*, 478 U.S. 647, 658, 106 S.Ct. 3143, 3150, 92 L.Ed.2d 525 (1986), such benefits cannot be deemed a "direct product" of the security that would be recoverable as actual damages. *Id.* Furthermore, such a claim for damages is too speculative to be actionable; indeed, as the *Randall* Court noted, the "formidable

difficulties in predicting the ultimate treatment of the investor's claimed tax benefits," *id.* at 665, 106 S.Ct. at 3154, render such claims unfeasible for the purpose of calculating damages.

■ Finally, William Chanoff claims damages for the emotional distress he suffered as a result of the alleged misconduct. Although Connecticut allows for recovery of emotional damages in fraud actions, such damages are only recoverable where they may be considered the "natural and proximate result of fraud." *Kilduff,* 219 Conn. at 324, 593 A.2d 478. Such a claim is untenable where, as here, the remaining claim is premised on a fraud-on-the-market theory of liability. In addition to the myriad problems of proof and certainty that would be created by recognizing a claim for emotional damages arising out of a public fraud as alleged herein, it is simply unreasonable to presume that an individual's emotional distress would be contemplated by the defendants who are alleged to have perpetrated that fraud.[5]

Therefore, the court finds that the plaintiffs have, for the most part, failed to allege actionable damages that could be found to be the direct and proximate result of the defendants' conduct. The fraud claims shall thus be dismissed except as to William Chanoff's claim for fraudulent inducement to buy additional USSC shares.

### 2. Breach of Fiduciary Duty: Count III

In Count III, plaintiffs allege that the defendants breached their fiduciary duties owed to the plaintiffs by trading on inside information without disclosing such information. The defendants argue that the plaintiffs lack standing to assert this claim because defendants owe no independent fiduciary duty to the plaintiffs, and the plaintiffs have failed to allege direct harm as a result of the alleged breach. The court agrees.

---

**5.** It is conceivable that William Chanoff would be able to state a claim for emotional injury stemming from the statements made directly to him by defendant Scipione, by alleging that defendant Scipione was aware of his personal, financial and physical condition, and therefore had reason to believe that her statements could have such emotional as well as physical impact. However, the court has previously found that any claims based on defendant Scipione's direct statements or a special duty to disclose to William Chanoff are preempted. Therefore, the claim for emotional damages can only be construed with respect to the remaining portion of the fraud claim which is based on the defendants' general duty to disclose to the public.

As discussed above, this claim is preempted to the extent that it is premised on a unique relationship of trust between defendant Scipione and William Chanoff and a resulting special duty to disclose to William Chanoff. Plaintiffs further allege, however, that the defendants breached their fiduciary duty to plaintiffs, as well as all shareholders, in failing to disclose the material information to the public and in taking advantage of and trading on their superior knowledge. This claim is flawed in two respects: First, similar to the discussion in the context of the fraud claim, plaintiffs have failed to allege direct harm or actionable damages flowing from the alleged breach.[6] Second, plaintiffs have failed to allege a duty directly owed to them, and therefore lack standing to assert this claim.

■■■■ In Connecticut, as elsewhere, " '[a]n officer and director occupies a fiduciary relationship to the corporation and its stockholders.' " *Pacelli Bros. Trans.,* 189 Conn. at 407, 456 A.2d 325 (quoting *Katz Corp. v. T.H. Canty & Co.,* 168 Conn. 201, 207, 362 A.2d 975 (1975)). Generally, a corporate director's responsibility to the corporation and shareholders only extends to the corporate property actually under the director's control. *See Strong v. Rapide,* 213 U.S. 419, 431, 29 S.Ct. 521, 525, 53 L.Ed. 853 (1909). Furthermore, these various duties are owed to the corporation directly, and only indirectly the corporation's shareholders. *See Treadway v. CARE Corp.,* 638 F.2d 357, 375 (2d Cir.1980); *Yanow v. Teal Indus., Inc.,* 178 Conn. 262,. 281, 422 A.2d 311 (1979). Any harm caused to shareholders as a result of a breach of these duties is thus said to be derivative of the harm to the corporation. As a rule, however, individual shareholders lack standing to sue officers at law for damages based on such derivative injury. *Yanow,* 178 Conn. at 281, 422 A.2d 311.

The plaintiffs are correct though that under special circumstances a corporate officer may owe a duty to individual shareholders which would support a direct cause of action by such shareholders for breach of that duty. When, for example, a "plaintiff-shareholder sustains a loss separate and distinct from that of the corporation, or from that of other shareholders, ... [the plaintiff] has the right to seek redress in a personal capacity for the wrong done to him individually." *Yanow,* 178 Conn. at 282, 422 A.2d 311; *see also Strong,* 213 U.S. at 431, 29 S.Ct. at 525.

■■■ Here, however, the plaintiffs fail to allege a duty owed distinctly to them. The plaintiffs claim that in trading on inside information without disclosing such information to the public, the defendant officers and directors breached their fiduciary duty to disclose owed to the shareholders individually. However, it "has been recognized that inside trading by a corporate fiduciary may be a violation of the common-law duty which he owes to the corporation," *Katz v. T.H. Canty and Co.,* 168 Conn. 201, 210, 362 A.2d 975 (1975), but not to individual shareholders. *See id.* (derivative action by shareholder for directors' breach of fiduciary duty). Indeed, the weight of common law authority has rejected the contention, central to the plaintiffs' claim, that a corporate officer, merely by virtue of status, occupies a position of trustee toward individual stockholders in the corporation. *See, e.g., Treadway,* 638 F.2d at 374, 375 (the majority rule is that directors do not owe a fiduciary duty directly to the shareholders); *Arrigoni v. Adorno,* 129 Conn. 673, 681, 31 A.2d 32 (1943) (a corporate officer "occupies a fiduciary relationship to the corporation and its stockholders, but he is not a trustee in the strict sense of the term."); *Goodwin v. Agassiz,* 283 Mass. 358, 186 N.E. 659, 660 (Mass.1933) ("directors are not the bailees, the factors, agents, or trustees of such individual stockholders." (citation omitted)).

■■■ While a director may assume a direct fiduciary relationship to an individual shareholder by engaging in a personal transaction with the shareholder, *see Strong,* 213 U.S. at 431, 29 S.Ct. at 525, no such duty is assumed where, as here, the alleged transac-

---

**6.** Indeed, insofar as the breach of the fiduciary duty is premised on the defendants' trading on inside information, it cannot be said that William Chanoff's purchase of additional shares at inflat-

ed prices, which is arguably a direct result of the alleged fraud, was caused by this alleged breach of fiduciary duty.

tions all occurred on a public exchange, in which "the purchases and sales of stock ... are commonly impersonal affairs." *Goodwin*, 186 N.E. at 660 (finding that corporate officers who bought shares in corporation on a stock exchange based on inside information had no direct fiduciary obligation to disclose such information to plaintiff shareholder who sold his shares on the exchange).[7] *See also In re Cady, Roberts & Co.*, 1961 WL 3743, at *5 (acknowledging rule that unless plaintiffs have bought from or sold to insider, they lack privity to recover under a private cause of action). *Strong* is illustrative: in that case, the Supreme Court explained that while a shareholder could not bring a direct action for breach of fiduciary duty against a director for general failure to disclose information based on the "bare relationship between director and shareholder," a shareholder could bring such an action where the director purchased shares from the shareholder without disclosing facts which affected the value of the shares. *Strong*, 213 U.S. at 429, 29 S.Ct. at 524.[8]

Interestingly, although the federal securities laws concerning insider trading were enacted, at least in part, to fill gaps left by the common law rules, the federal laws echo these same common law principles.[9] In the context of Rule 10b–5 actions for unlaw-

ful insider trading, for example, this circuit has explained that "any duty of disclosure is owed only to those investors trading contemporaneously with the insider; non-contemporaneous traders do not require the protection of the 'disclose or abstain' rule because they do not suffer the disadvantage of trading with someone who has superior access to information." *Wilson v. Comtech Telecommun. Corp.*, 648 F.2d 88, 94–95 (2d Cir.1981) (finding no standing to assert unlawful insider trading under Rule 10b–5). Similarly, in creating a private cause of action for insider trading, section 20A(a) of the 1934 Securities Exchange Act expressly limited standing to contemporaneous investors in securities of the same class. 15 U.S.C. § 78t–1(a). The imposition of this "contemporaneous investor" standing requirement in the federal securities laws reflects the basic common law principle, applicable here, that only those clearly ascertainable individuals who stand to be exploited by the insider trading—for example, by personally trading with the insider or, in the context of the federal law, by trading on the same market with the insider—can be said to have individual interests that are directly implicated by the insider trading for which they may seek direct redress.[10]

7. Acknowledging that this distinction is governed by rules of practice, and that "[l]aw in its sanctions is not coextensive with morality," the *Goodwin* court explained that "fiduciary obligations of directors ought not be made so onerous that [individuals] ... will be deterred from accepting such office." *Goodwin*, 186 N.E. at 660.

8. The court notes that the *Strong* case originated in the Philippines, then a territory of the United States, and thus relied on federal civil law, not state common law.

9. In *Dirks v. SEC*, the Supreme Court noted that the federal "duty that insiders owe to the corporation's shareholders not to trade on inside information differs from the common law duty that officers and directors also have to the corporation itself not to mismanage corporate assets, of which confidential information is one." *Dirks*, 463 U.S. 646, 652, 103 S.Ct. 3255, 3261, 77 L.Ed.2d 911 (1983). The court further noted that a primary purpose of the federal act "was to eliminate the idea that personal advantage was a normal emolument of corporate office." *Id.* at 653 n. 10, 103 S.Ct. at 3260 n. 10.

10. It has been suggested that the issue of a director's common law liability for trading on inside information "has been largely mooted by the advent of a federal cause of action under § 10b of the 1934 Act...." *Treadway*, 638 F.2d at 375 n. 35. The court notes, however, that even under the federal standard, which arguably allows broader relief to individual shareholders, the plaintiffs do not state a viable claim. Because plaintiffs David Chanoff, Rachel Chanoff and Harriet Fingerote did not trade in their USSC stock, the court could not find that they were owed an individual duty that would support a direct claim under federal law. Furthermore, although William Chanoff did purchase USSC shares, he did so on October 9, 1992, more than a month from the most temporally proximate trade undertaken by any one of the defendants, and therefore he could not be deemed to have been a "contemporaneous investor" for the purpose of stating a federal claim. (*See* Compl. ¶¶ 38, 69.) (alleging trading activity by the defendants between January 20, 1992 and March 17, 1992, and between November 10, 1992 and December 16, 1992). *Cf. Wilson*, 648 F.2d at 94–95 (trader who purchased stock one month after

Yet here because plaintiffs did not engage in any face-to-face transactions with the defendant officers or directors, they fail to allege any basis for this direct claim for breach of fiduciary duty. Plaintiffs fail as well to claim actionable damages. Therefore, even if the defendants breached fiduciary duties owed to the corporation and indirectly to shareholders, plaintiffs lack standing to bring a direct action for such breach. Thus, this claim shall be dismissed as to all plaintiffs.

### 3. *Negligence: Counts IV & V*

Similarly, plaintiffs' negligence claims fail not only for failure to allege proximate injury but also for lack of standing. Relying on the Restatement (Second) of Torts § 552, plaintiffs contend that a claim for negligent misrepresentation may flow from a public duty to disclose where, as here, plaintiffs are within the class of persons for whose benefit such disclosure was to be made. The court, however, declines to impose such indeterminate liability.

■■■■ Connecticut follows the common law elements of negligent misrepresentation as set forth in the Restatement (Second) of Torts § 552. To state such a claim, the plaintiffs must allege that an individual in the course of his business or employment supplied false information for the guidance of others in their business transactions, that the individual failed to exercise reasonable care in obtaining or communicating the information, and that the plaintiffs suffered pecuniary loss as a result of their justifiable reliance on the information. *Mason v. Burkett,* 756 F.Supp. 679, 681 (D.Conn.1991) (citing Restatement (Second) Torts, § 552). The Restatement further provides that "the liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them." Restatement (Second) § 552(3).

■■■■ The remaining portion of this claim, that which the court has found not preempted, is based on negligence stemming from defendants' public disclosures. However, where, as in this context, "a corporation does

defendants' sales lacked standing to sue for un-

not and cannot know the identity of the recipients of its disclosures at the time those disclosures are made, liability under Section 552 does not obtain." *In re Westinghouse Sec. Litig.,* 832 F.Supp. 948, 988 (W.D.Pa. 1993). Indeed, to recognize plaintiffs' claim and the potential liability " 'in an indeterminate amount for an indeterminate time to an indeterminate class' would be contrary to the language and intent of Section 552." *Id.* (quoting *Ultramares Corp. v. Touche,* 255 N.Y. 170, 189, 174 N.E. 441, 448 (1931) (Cardozo, J.)). Therefore, this claim shall be dismissed as to all plaintiffs.

### 4. *Conn.Gen.Stat. § 36–472*

■■■■ Defendants contend that the § 36–472 claim fails because there is no private right of action under the statute, the claims lack sufficient nexus to Connecticut as required under the act and even if a private right of action existed, the plaintiffs fail to meet the purchaser/seller requirement.

The plaintiffs concede that the purchaser/seller requirement applies to the state claim and thus limit their claim to the 2000 shares bought by William Chanoff. However, because the court agrees that there is no private right of action under the statute, the court need not address the other arguments raised and this claim shall be dismissed in its entirety.

Conn.Gen.Stat. § 36–472 directly tracks the language of Rule 10b–5, and does not expressly provide for a private cause of action although the related § 36–498 does. There is a split in this district, however, as to whether because there is a private right of action under Rule 10b–5, it is reasonable to assume that a similar right may be implied under § 36–472. *Compare Weisman v. Oliver Rose Sec. Inc.,* B–85–126 (1987) (Burns, J.) (attached as Pl.Ex. 7 at 61) (finding implied right of action); *with Heineman v. Kemp,* B–87–615 (1988) (Daly, J.) (attached as Pl.Ex. 5, at 9) ("Plaintiffs admit that there is no private right of action under § 36–472.") *and Zuccarelli v. North American Holding Corp.,* 1991 Conn.Super. 642, 1991 WL 50410, (attached as Pl.Ex. 8) ("the court

lawful trading under Rule 10b–5).

agrees that § 36–472 does not create a private cause of action."). *See also Clute v. Davenport,* 584 F.Supp. 1562, 1574 (D.Conn. 1984) (declining to reach issue, but noting that the court may refer to federal statutes as well as the Uniform Securities Act to resolve the question).

In the interests of consistency, the court chooses to follow the more recent, albeit scant, precedent from this District and the Connecticut Superior Court. In light of this precedent, and until such time as the Connecticut Supreme Court or legislature dictates to the contrary, the court declines to imply a private cause of action under § 36–472, and therefore, Count VIII shall be dismissed as to all plaintiffs.

## II. *Federal Claims*

The plaintiffs' complaint alleges the following federal claims: in Count VI, plaintiffs allege a violation of Section 10b of the 1934 Federal Securities Act, 15 U.S.C. § 78j(b) and Rule 10b–5, promulgated thereunder, and in Count VII, plaintiffs allege violations of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* against the individual defendants.

### A. *Rule 10b–5 Claims*

Defendants argue that because the crux of the plaintiffs' claims are for fraudulent inducement to *retain* shares, they are merely holders of shares, not purchasers or sellers, and therefore are not entitled to a private cause of action under Rule 10b–5. The court agrees.

To state a claim under Section 10(b) and Rule 10b–5, plaintiffs must allege that, " 'in connection with the purchase or sale of securities, the defendant[s], acting with scienter, made a false material representation or omitted to disclose material information and that the plaintiff[s'] reliance on the defendant[s'] actions caused [them] injury.' " *Ferber v. Travelers,* 802 F.Supp. 698, 705 (D.Conn. 1992) (Nevas, J.) (citation omitted). The Supreme Court has held, however, that Rule 10b–5 claims are limited to individuals who either bought or sold shares during the time in which the market was allegedly defrauded.

*Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 737–38, 95 S.Ct. 1917, 1926, 44 L.Ed.2d 539 (1975) (shareholders who have neither bought nor sold shares have no standing to bring Rule 10b–5 private cause of action).

Plaintiffs apparently concede that the Rule 10b–5 claims cannot be based on shares that were neither purchased nor sold as they do not respond to this argument in their response. In light of this, the federal claims for fraudulent inducement to retain shares shall be dismissed. William Chanoff's Rule 10b–5 claim based on the 2000 additional shares he bought during the relevant time period does not share this defect and thus shall not be dismissed.

### B. *Rico Claims*

The defendants further argue that because the plaintiffs lack standing to allege a Rule 10b–5 claim, they are similarly barred from bringing a RICO action based on a Rule 10b–5 predicate offense. While the court agrees with the defendants, this argument does not alone defeat the RICO claim. Rather, the court finds that the RICO claim must be dismissed on additional grounds.

18 U.S.C. § 1964 creates a private right of action for "[a]ny person injured in his business or property by reason of a violation" of the Rico statute, as described in 18 U.S.C. § 1962. To state a claim for such a violation, the complaint "must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Andreo v. Friedlander, Gaines, Cohen, Rosenthal & Rosenberg,* 651 F.Supp. 877, 882 (D.Conn.1986) ("*Andreo I* ") (citing *Sedima v. Imrex Co., Inc.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985)). To establish a "pattern of racketeering activity" under RICO, the complaint must allege the commission of "at least two acts of racketeering activity" by each defendant. 18 U.S.C. § 1961(5); *Celpaco, Inc. v. MD Papierfabriken,* 686 F.Supp. 983, 992 (D.Conn.1988). RICO defines an act of "racketeering activity" as (1) the commission of certain felonies "chargeable under state law" and specifically enumerated by the statute; (2) certain enumerated acts indict-

able under Title 18; (3) certain enumerated acts indictable under Title 29 of the United States Code; (4) "any offense involving fraud connected with a case under title 11 of the United States Code ..."; or (5) any violation of the federal narcotics laws. 18 U.S.C. § 1961(1). The acts of racketeering activity, moreover, are referred to as the "predicate" acts or offenses in a RICO action. *See, e.g., Beck v. Manufacturers Hanover Trust Co.,* 820 F.2d 46, 49 (2d Cir.1987), *cert. denied,* 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988); *overruled on other grounds, United States v. Indelicato,* 865 F.2d 1370 (2d Cir. 1989). The Supreme Court has explained that to meet the "pattern" requirement, "the predicate acts must be related and must be part of a continuous criminal endeavor." *International Data Bank v. Zepkin,* 812 F.2d 149, 154 (4th Cir.1987) (*citing Sedima v. Imrex Co., Inc.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985)).

 Applying these rules and based on the court's discussion of William Chanoff's state and federal fraud claims, the court finds that upon the generous reading of the complaint required in this context, William Chanoff has stated a RICO claim to the extent that he alleges he was fraudulently induced to purchase additional shares of USSC at inflated prices.[11] Such is not the case for the other plaintiffs, who, the court has already found, fail to state viable state or federal fraud claims as they were neither purchasers nor sellers of stock and have not pled actionable damages.

First, the court agrees with the defendants that the other plaintiffs fail to state a valid Rule 10b–5 predicate claim. Although plaintiffs may be correct in contending that there is no general purchaser-seller standing requirement under RICO, courts have held that where the plaintiff pleads a predicate Rule 10b–5 violation, the Rule 10b–5 standing requirement still applies. *Zepkin,* 812 F.2d at 152 ("where the RICO plaintiff pleads a Rule 10b–5 predicate offense, standing would be limited to actual purchaser or seller of securities.") *Accord Par Pharmaceutical Inc. Sec. Litig.,* 733 F.Supp. 668, 683 (S.D.N.Y.1990) (RICO limited to fraudulent acts in the actual sales transaction). Furthermore, the plain language of RICO indicates that it is directed at "fraud in the sale of securities...." 18 U.S.C. § 1961(1)(D). While there seems to be a split in the courts on this purchaser-seller issue, there is at least consensus with respect to the general, and logical, rule that when a plaintiff fails to state a viable securities fraud claim, that claim may not serve as a valid RICO predicate. *See, e.g., Somerville v. Major Exploration,* 576 F.Supp. 902, 913–914 (S.D.N.Y. 1983); *Mauriber v. Shearson/American Express,* 546 F.Supp. 391, 397 (S.D.N.Y.1982). *See also Holmes,* —— U.S. at ——, 112 S.Ct. at 1321 (declining to resolve conflict on issue, but suggesting that most cases can be resolved on basis of proximate cause).

 The defendants' motion to dismiss the RICO claim focuses on the plaintiffs' failure to state a Rule 10b–5 claim. Yet that the Rule 10b–5 claim is not a viable predicate does not alone foreclose the RICO claim because plaintiffs allege additional predicate acts such as mail, wire and common law fraud.[12] However, as discussed above, plain-

---

11. This is not to say that William Chanoff's claims for damages are all sustainable as injury to business or property as required under RICO. For example, it seems clear that damages for emotional distress, claimed by William Chanoff, are not recoverable as damages to business or property under RICO. *Accord Zimmerman v. HBO Affiliate Group,* 834 F.2d 1163, 1169 (3d Cir.1987) (mental distress is not actionable under RICO); *Manson v. Stacescu,* 823 F.Supp. 76, 80–81 (D.Conn.1993) (murder threat does not cause type of injury protected under RICO).

The court further notes that while it might seem appropriate to impose more exacting pleading requirements on RICO claims, which allow plaintiffs to recover treble damages from defendants for criminal conduct established under civ-

il standards of proof, the court recognizes that "[c]omplaints that RICO may effectively federalize common law fraud and erode recent restrictions on claims for securities fraud are better addressed to Congress than to courts." *Moss v. Morgan Stanley, Inc.,* 719 F.2d 5, 21 (2d Cir. 1983); *cert. denied,* 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984).

12. To prove mail or wire fraud, the private litigant must establish 1) a scheme or artifice to defraud to obtain money or property by means of false and fraudulent representations, 2) the use of the mails or wire in furtherance of executing such scheme and 3) the defendant connected with the scheme used or caused the use of the mails or wires. *See, e.g., Phoenix Home Life Ins.*

tiffs fail to allege damages that could be found proximately related to the conduct, and therefore, they fail to allege individual injury to their business or property sufficient to sustain the RICO claim. *See Leach v. FDIC,* 860 F.2d 1266, 1273 (5th Cir.1988), *cert. denied,* 491 U.S. 905, 109 S.Ct. 3186, 105 L.Ed.2d 695 (1989) (finding that shareholders failed to state viable RICO claim because they did not allege injury to property that was distinct from injury suffered by corporation, and therefore had not alleged individual injury required under RICO); *cf. Ceribelli v. Elghanayan,* 990 F.2d 62, 62–63 (2d Cir. 1993) (so long as plaintiffs suffered injury directly, they had standing to bring RICO claim even if corporation suffered identical injury for which it had similar right to recovery).

In *Manson v. Stacescu,* 823 F.Supp. 76, 79 (D.Conn.1993) (Eginton, J.), *aff'd,* 11 F.3d 1127 (2d Cir.1993), the court explained that, as a rule, shareholders are prohibited from bringing individual suits under RICO unless they can show direct harm in addition to the economic impact on the company. For example, the court noted that "minority shareholders have been granted standing under RICO when a majority shareholder violated a fiduciary duty owed directly to plaintiff, in addition to committing fraud on the company which caused plaintiff's stock to depreciate in value (citations omitted)." *Manson,* 823 F.Supp. at 80; *see Leach,* 860 F.2d at 1273 n. 14 (property must be defined according to state law).

In contrast, here the plaintiffs do not allege breach of a duty owed directly to them, and in the absence of such, the plaintiffs' claims for depreciation in stock value are merely derivative in nature and thus fail to confer standing under RICO. *Accord Crocker v. FDIC,* 826 F.2d 347, 351 (5th Cir.1987) (holders of stock who alleged diminution in stock value or lost profit opportunity failed to plead injury sufficient to state valid RICO claim); *cf. Ceribelli,* 990 F.2d at 63 (shareholder may bring individual RICO claim only for nonderivative injury).

Nor do the other claims of injury provide a basis to sustain this claim: Plaintiffs claim damages for margin calls and increased tax liability; yet even if the court could find that any or all of such damages could be construed as damage to business or property as required under the RICO statute, as discussed above, the alleged damages cannot be said to be proximately related to the claimed predicate acts of fraud. *See Holmes,* —— U.S. at ——, 112 S.Ct. at 1317 (explaining that injury must be proximate result of alleged harm). Thus, plaintiffs fail to state a RICO claim based on the alleged misconduct, *see Manson,* 823 F.Supp. at 78 (RICO standing limited to plaintiffs who allege injuries proximately caused by the predicate acts), and the claim shall be dismissed as to plaintiffs David Chanoff, Rachel Chanoff and Harriet Fingerote.

## CONCLUSION

Based on the foregoing, the defendants' motion to dismiss [doc. # 18] is GRANTED in part and DENIED in part. The motion is granted with respect to Counts III, IV, V, VIII and David Chanoff's, Rachel Chanoff's and Harriet Fingerote's claims contained in Counts I, II, VI and VII. The motion is denied with respect to William Chanoff's claims contained in Counts I, II, VI and VII only insofar as he claims damages flowing from his purchase of 2000 shares of USSC stock. However, because the surviving claims are substantially similar to those raised in the related pending class action litigation, these claims shall be consolidated with such litigation. (*See USSC Sec.Litig.,* 3:92CV00374 (AHN).)

SO ORDERED.

---

*Co. v. Greenwich Acupuncture Ctr.,* 1993 WL 298967, *2–3 (D.Conn.1993); *Micro–Medical In-* *dus., Inc. v. Hatton,* 607 F.Supp. 931, 936 (D.P.R. 1985).