[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
Plaintiff, Joseph DeMarco, filed a two count complaint against defendant, William Carlson, on June 8, 2000. The complaint alleges that in the sale of a property to one Smith, a property in which plaintiff and defendant each had an interest, co-seller Carlson made misrepresentations to plaintiff which essentially resulted in plaintiff receiving less than the agreed upon share he was due. The plaintiff's causes of action are in fraud and unjust enrichment, respectively. In count one, defendant Carlson seeks summary judgment on the ground that there is no genuine issue of material fact that any fraud was committed. Carlson also argues that he is entitled to summary judgment as to the fraud-count on the ground that it is barred by the statute of limitations, General Statutes § 52-577. Carlson further argues that the second count, in unjust enrichment, is barred by the doctrine of laches to the extent plaintiff seeks equitable relief (which, has not yet been specified)
The complaint alleges the following facts. In May 1987, plaintiff DeMarco purchased a parcel of land in Monroe for $520,000. At the time of purchase, three separate mortgages were placed. First, DeMarco granted a mortgage to the seller of the property in exchange for $200,000. The second mortgage was given to Carlson in exchange for $50,000. The third mortgage was given to Carlson's wife, Saundra Carlson, in exchange for CT Page 6313 $242,462. Several months later, when DeMarco expressed his intention to pay off the mortgages held by Carlson and his wife, Carlson proposed that DeMarco retain a portion of his (DeMarco's) funds to reinvest in the property and that the two develop and market the property for their mutual benefit. In August 1987, DeMarco made partial debt payments totaling $167,462 that resulted in a remaining debt of $25,000 to Carlson and $100,000 to Saundra Carlson. At the same time, DeMarco and Carlson entered into a written agreement that provided, when the property was sold, any proceeds over $800,000 would be divided equally between the two parties.[1]
DeMarco alleges that Carlson, while acting as a co-seller, made fraudulent misrepresentations to a buyer, Harold Smith, inducing Smith to purchase the property from DeMarco for $900,000, a price that was significantly less than its alleged value of between $1 and $1.4 million.[2] DeMarco alleges that, as a result of Carlson's misrepresentations to him, DeMarco believed that he would receive $800,000 in cash or other transfers in addition to a 50 percent share of the amount more than $800,000, or $100,000, for a total of $900,000.[3]
DeMarco says that he learned of Carlson's alleged misrepresentations to Smith in December 1999. In March, 2000, DeMarco claims that he obtained information from the lawsuit between Carlson and buyer Smith that led him to believe that Carlson had benefitted from the sale of the property to Smith by an amount more than $100,000, in violation of the 1987 agreement.[4]
A "motion for summary judgment is designed to eliminate the delay and expense of litigating an issue when there is no real issue to be tried."Wilson v. New Haven, 213 Conn. 277, 279, 567 A.2d 829 (1989)
In response to defendant Carlson's arguments that the actions are barred by the passage of time, plaintiff DeMarco argues that the statute of limitations was tolled by defendant Carlson's continuing course of conduct. According to DeMarco, the agreement between the two, for the marketing and sale of the property, established a fiduciary relationship that continued long after the property was sold. Genuine issues of fact do seem to exist as to whether a fraud was committed and generally these issues are left to a trier of fact to decide. "Fraud and misrepresentation cannot be easily defined because they can be accomplished in so many different ways. They present, however, issues of fact." Maturo v. Gerard, 196 Conn. 584, 587, 494 A.2d 1199 (1985). Further, the court finds that genuine issues of material fact exist as to whether the defendant owed a fiduciary duty to the plaintiff that could potentially trigger the continuing course of conduct doctrine. "The continuous course of conduct doctrine is conspicuously fact-bound." (Internal quotation marks omitted.) Sanborn v. Greenwald, CT Page 631439 Conn. App. 289, 295, 664 A.2d 803, cert. denied, 235 Conn. 925,666 A.2d 1186 (1995)
Despite these issues of fact, this court has concluded that the plaintiff cannot prevail in his claims. DeMarco's allegation, that he was unaware of Carlson's misrepresentations to him until March 2000, is contradicted by uncontroverted evidence submitted by Carlson in support of the motion for summary judgment. First, there is the October, 1996 deposition testimony by DeMarco from the lawsuit between Carlson and Smith.[5] During this deposition, DeMarco said that he learned in 1996 that Carlson received a half interest in the entire property when he had misrepresented to DeMarco that he, Carlson, received only marina rights. The testimony indicates that DeMarco believed that Carlson had allegedly cheated him. Yet DeMarco chose to do nothing. In addition, there is the quitclaim deed in which new buyer Smith deeded a half interest in the property to Carlson, signed on the same March 1, 1989 date that DeMarco transferred the property to Smith, and which was recorded in the land records on March 2, 1989.[6] The deed disclosed Carlson's interest in the property and was available to DeMarco before and after he may have had any suspicions about Carlson. "Under our recording system a deed duly recorded is constructive notice to all the world; and the law conclusively presumes that every person interested has knowledge, not only of the deed, but of its precise language." Beach v. Osborne,74 Conn. 405, 412, 50 A. 1019 (1902). Finally, the sales agreement transferring the property to Smith lists the total sales price of $900,000 and includes, as one of the items of consideration, the assumption of the $100,000 note to Saundra Carlson by the buyer Smith. DeMarco claims that this contradicted his understanding of the 1987 agreement with Carlson, yet he did not make an inquiry about it at the time of the 1989 closing or of Carlson afterwards.
The facts therefore indicate that DeMarco believed, by April 1996 at the latest: 1) that Carlson's alleged interest in the property, after the sale to Smith, was much greater than Carlson allegedly indicated; and 2)that he, DeMarco, did not receive the consideration he believed he was entitled to from the 1987 agreement with Carlson and the 1989 sale of the property.
The statute of limitations, General Statutes § 52-577, requires that: "No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of." It is possible that plaintiff, in other circumstances, may have been able to establish a case sounding in fraud for which a time limitation period would be tolled by a continuing course of conduct. It is the conclusion of this court, however, that DeMarco's cause of action in fraud accrued at the time of his knowledge of a possible breach of duty by defendant. For while it is CT Page 6315 true that there are pockets of dispute between the parties regarding certain facts, under the circumstances, plaintiff's discovery of having been wrongfully treated commences the time period for the statute of limitations. A cause of action accrues at the time of discovery whetheror not the defendant may have a continuing duty. Arrigoni v. Adorno,129 Conn. 673, 680-81, 31 A.2d 32 (1943). "Permitting the accrual point to be pushed forward as long as it is claimed that the negligent conduct continued has the potential of pushing forward the end of the limitation period indefinitely, as long as the defendant continues in the course of conduct and the plaintiff does not protest. It would, in effect, allow the plaintiff to acquiesce in the defendant's conduct for as long as convenient to the plaintiff, contrary to one of the purposes of the statutes of limitations, which is to prevent the unexpected enforcement of stale claims concerning which the persons interested have been thrown off their guard by want of prosecution." (Internal quotations marks omitted.) Rivera v. Fairbank Management Properties, Inc.,45 Conn. Sup. 154, 160, 703 A.2d 808 (1997)
The action in unjust enrichment must also fail. Both counts of the complaint arise out of the same set of facts and since the cause of action in fraud is said to be untimely brought, it is hard to see why the quasi-symmetrical action in unjust enrichment should stand. "[Even though this cause of action be regarded as one in equity, equity here should follow the law." Arrigoni v. Adorno, supra,129 Conn. 681. Given this, it is unnecessary to address the laches defense.
For these reasons, this court grants the defendant's motion for summary judgment as to both counts.
The Court
 By ___________________ NADEAU, JUDGE